925 P.2d 294

**STATE of Hawai'i, Petitioner–Appellee,**

v.

**James Gilbert KAHOONEI, Respondent–Appellant.**

**No. 17201.**

Supreme Court of Hawai'i.

Sept. 17, 1996.

---

Ray Allen Findlay, on the briefs, Honolulu, for respondent-appellant.

Donn Fudo, Deputy Prosecuting Attorney, on the briefs, Honolulu, for petitioner-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

We granted a writ of certiorari to petitioner-appellee State of Hawai'i (the prosecution) to review the decision of the Intermediate Court of Appeals (ICA) in *State v. Kahoonei*, —— Hawai'i ——, 925 P.2d 379 (App.1995) (*Kahoonei I*). The prosecution contends that the ICA erroneously concluded that certain evidence should have been suppressed because the defendant's mother was acting as "an agent of the police" when she retrieved the items of evidence. For the reasons discussed below, we affirm the decision of the ICA, but on different grounds.

## I. BACKGROUND

On August 30, 1990, in response to a call of a "disturbance and gunshots," at least six police officers arrived at the home of Angeline Kahoonei (Mrs. Kahoonei), mother of the defendant, James Gilbert Kahoonei. Kahoonei rented a room in his mother's home and resided there with his live-in girlfriend, Denise Tamanaha, their two daughters, his brother, and Mrs. Kahoonei.

Upon arrival at the Kahoonei residence, the police officers were met outside the house by Tamanaha, who informed the police that (1) she and Kahoonei had had an argument, (2) the argument was over, and (3) no guns were involved. With Mrs. Kahoonei's permission, the police entered the residence. While inside the residence, a brief scuffle ensued between Kahoonei and one of the officers. Kahoonei was arrested for harrassment and placed in a police car. The police then began interviewing Tamanaha and Mrs. Kahoonei.

During the interview, police officer Benton Akina noticed a bullet hole in the living room floor. After officer Akina informed Sergeant Rosaline Lenchanko of the bullet hole, Sergeant Lenchanko told Mrs. Kahoonei and Tamanaha that a search warrant "could be gotten to search the house" and that a search "would be done anyway." While Sergeant Lenchanko continued to interview Tamanaha in another room, officer Akina turned Mrs. Kahoonei's attention to the bullet hole in the living room floor and remarked that the gun "could have fired in a different direction and someone might have got [sic] hurt." According to officer Akina, Mrs. Kahoonei paused for a moment and then advised Akina that she would check Kahoonei's bedroom for a firearm. Officer Akina, for "safety reasons," followed Mrs. Kahoonei to Kahoonei's bedroom. While officer Akina stood in the doorway and watched, Mrs. Kahoonei walked to a

126

closet in the bedroom and retrieved a revolver, which she handed to officer Akina. Mrs. Kahoonei also retrieved and handed to officer Akina a brown, half-opened revolver case, which contained some ammunition. Officer Akina and Mrs. Kahoonei then walked outside of the house, where Mrs. Kahoonei prepared and signed a written statement.

Kahoonei was subsequently charged with two counts of possession of a firearm and ammunition by a person convicted of certain crimes, in violation of Hawai'i Revised Statutes (HRS) § 134–7(b) and (f) (Supp.1992),[1] and one count of harassment, in violation of HRS § 711–1106(1)(a) (1985).[2] On November 19, 1990, Kahoonei filed a motion to suppress all of the items of evidence recovered by the police with the assistance of his mother, arguing that she was coerced into retrieving the items by the police. At the hearing on the motion, Mrs. Kahoonei testified that she retrieved the revolver because the police had threatened her; however, she admitted that she was not threatened into executing her written statement, which made no mention of her being threatened. Officer Akina testified that no threats were made, although he admitted hearing Sergeant Lenchanko tell Mrs. Kahoonei and Tamanaha that a search warrant "could be gotten to search the house" and that a search "would be done anyway."

As noted by the ICA in *Kahoonei I*, the motions court did not enter written findings of fact and conclusions of law. However, in accordance with Hawai'i Rules of Penal Procedure (HRPP) Rule 12(e) (1990),[3] the motions court indicated its essential findings on the record, stating:

The Court concludes that [Kahoonei] had a right to privacy in his bedroom area. And Mrs. Kahoonei could neither consent, as owner of the house, to [a] search of the bedroom, nor could she validly waive [Kahoonei's] right to privacy in the bedroom. The recovery of the gun would be illegal, therefore, if the officers had searched the bedroom for the weapon. Based on the facts, the Court concludes that the police did not search the bedroom.

The question, then, is whether Mrs. Kahoonei entered into the bedroom acting under the direction of or under the instruction of the police so that she conducted a search as an agent. This determination is necessary because it is police and state action which is prescribed [sic] by law, not private action. While there is no question that Akina appealed to Mrs. Kahoonei, as to her sense of reason and to her conscience, in advising her of the risk of harm or injury that a handgun could cause, the Court concludes, based on the totality of the evidence and the credibility of the witnesses, that Mrs. Kahoonei entered into her son's room to recover the hangun and that she did so as her personal agent and not on behalf of Akina or the police department.

The motions court then orally denied Kahoonei's motion to suppress.

Kahoonei was subsequently found guilty on all counts following a jury trial. The court sentenced Kahoonei to two ten-year terms of imprisonment and one thirty-day term of imprisonment, to be served concurrently. Kahoonei appealed, and the case was assigned to the ICA.

1. HRS § 134–7 provides in pertinent part:

(b) No person who is under indictment for, or has waived indictment for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.
. . . .
(f) Any person disqualified from ownership, possession, or control of firearms and ammunition by this chapter shall dispose of all firearms and ammunition in compliance with this chapter.

2. HRS § 711–1106(1)(a) provides in pertinent part that "[a] person commits the offense of harassment if, with intent to harass, annoy, or alarm another person, he [or she] ... [s]trikes, shoves, kicks, or otherwise touches a person in an offensive manner or subjects him [or her] to offensive physical contact...."

3. HRPP Rule 12(e) provides in pertinent part that "a motion to suppress made before trial shall be determined before trial. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record."

On May 10, 1995, the ICA: (1) reversed the circuit court's denial of Kahoonei's motion to suppress; (2) vacated the judgment of conviction pertaining to the two counts of illegal firearms possession; and (3) remanded the case for a new trial on those counts.[4] The ICA concluded that, "because an affirmative explanation of the discretionary nature of the search warrant-issuing process was never provided to Mrs. Kahoonei by the police, the statement [that a search warrant 'could be gotten to search the house' and that a search 'would be done anyway'] communicated to Mrs. Kahoonei the futility of refusing to cooperate with the police and was a strong motivating factor in causing her to search for the evidence." The ICA, therefore, held that, in retrieving the handgun and ammunition, Mrs. Kahoonei was acting as a government agent, and her actions resulted in an unconstitutional warrantless search. Thereafter, we granted the prosecution's timely application for a writ of certiorari.

## II. *DISCUSSION*

### A. *The ICA's Decision*

Relying on *State v. Boynton,* 58 Haw. 530, 574 P.2d 1330 (1978), the ICA, in *Kahoonei I,* determined that whether a private individual acts as a government agent depends on the degree of the government's involvement in the act. In *Boynton,* an informant supplied the police with information regarding marijuana cultivation at a private residence. In order to obtain the information, the informant trespassed by scaling a wooden fence approximately six and a half feet high. In exchange for the information, the informant received $30.00 from the police. The trial court granted the defendant's motion to suppress the evidence seized by the police in a subsequent search, based upon a warrant relying on the informant's information.

On appeal, the prosecution conceded that, if the evidence had been obtained by a government agent, it would have been subject to the exclusionary rule. However, because the evidence was obtained by a private person, the prosecution argued that the fourth amendment's proscription against unreason-

able searches and seizures was inapplicable. We stated in *Boynton* that our task was "to determine whether the informer's search of the enclosed area was a private search or a governmental search." *Id.* at 536, 574 P.2d at 1334. We explained that, when a private individual conducts a search initiated by the government and under the government's guidance, it is not a private search. *Id.* (citations omitted); *see also State v. Furuyama,* 64 Haw. 109, 120, 637 P.2d 1095, 1102 (1981) (holding that, where individuals were not bystanders but active members of a police-directed effort, their deed was not a private action). We also made clear in *Boynton* that, where private individuals "act as agents of the police ... the full panoply of constitutional provisions and curative measures applies." *Boynton,* 58 Haw. at 536, 574 P.2d at 1334 (citation omitted); *Furuyama,* 64 Haw. at 120, 637 P.2d at 1102–03.

Although we recognized in *Boynton* that a definitive rule regarding what elements constitute an agency relationship between a private informant and the police would be difficult to fashion, we delineated several factors to be considered, that is, whether the private individual: (1) was actively recruited; (2) was directed by a government agent; (3) acted for a private purpose; and (4) received any payment for his or her services. *Id.* at 537–38, 574 P.2d at 1335. Because the informant in *Boynton* was involved in a "symbiotic relationship" with the police, *id.* at 537, 574 P.2d at 1335, having been actively recruited by the police and paid for the information, we held that the informant was a government agent for fourth amendment purposes. *Id.* at 540, 574 P.2d at 1336. Thus, this court affirmed the suppression of the evidence, holding that "we cannot condone the use by the state of information illegally obtained by a semi-professional police informant whose sole purpose in this kind of endeavor is to gather data to be used in criminal prosecutions." *Boynton,* 58 Haw. at 539, 574 P.2d at 1336.

In the present case, although the ICA determined that Mrs. Kahoonei was neither "actively recruited" nor paid by the police, it analyzed what it saw as the remaining two *Boynton* factors: "[ (1) ] the extent of police

---

4. As noted by the ICA, Kahoonei did not appeal   his conviction for harassment.

direction of Mrs. Kahoonei's search, and [ (2) ] the purpose or motivation of Mrs. Kahoonei in performing the search." *Kahoonei I*, at ——, 925 P.2d at 386 (footnote omitted). In considering factor (1) above, the ICA determined that this case "present[ed] a difficult and close question as to whether the extent of the police involvement in this case was sufficient to constitute direction of Mrs. Kahoonei to conduct the search so as to render her a government agent[.]" *Id.*, at —— – ——, 925 P.2d at 387–388. However, without resolving the issue, the ICA proceeded to examine what it viewed as the "motivation factor" of the *Boynton* test. Specifically, the ICA posed and examined "[t]he relevant question . . . [of] what motivated Mrs. Kahoonei to retrieve the incriminating evidence, i.e., what was her intent or purpose?" *Id.*, at ——, 925 P.2d at 388.

The ICA explained that motivation "is generally a question of fact [and] . . . usually entails the drawing of factual inferences[.]" *Id.* (citing *Hanagami v. China Airlines, Ltd.*, 67 Haw. 357, 364, 688 P.2d 1139, 1145 (1984) (citation and internal quotation marks omitted)). The ICA then determined that the motions court's finding that Mrs. Kahoonei "was prompted by personal reasons to conduct the search . . . [was] clearly erroneous." *Kahoonei I*, at ——, 925 P.2d at 388. The ICA stated that,

> because an affirmative explanation of the discretionary nature of the search warrant-issuing process was never provided to Mrs. Kahoonei by the police, the statement [that a "search warrant could be gotten to search the house" and that "a search would be done anyway"] communicated to Mrs. Kahoonei the futility of refusing to cooperate with the police and was a strong motivating factor in causing her to search for the evidence. Consequently, we are left with a definite and firm conviction that the motions court was mistaken when it found that Mrs. Kahoonei was acting for personal, rather than government, purposes when she conducted the search.

*Id.*

In his concurring opinion in *Kahoonei I*, Judge Acoba reasoned that:

> It is abundantly plain that Mrs. Kahoohei did not arrive at an independent decision to recover the gun. [Kahoonei] had been arrested and removed from the premises. The police, nevertheless remained on the premises, obviously to further their investigation and to recover evidence against [Kahoonei]. The thought of searching for a gun did not originate with Mrs. Kahoonei but with the police. Sergeant Lenchanko indicated to the two women that "a search warrant could be obtained" and so a "search would be done anyway." The only conceivable conclusion that can be drawn from this is that the police were intent upon a search of the premises. After this advisory, the women were separated and each interrogated by a police officer. In this investigatory setting, Officer Akina made his appeal to, as the trial court characterized it, Mrs. Kahoonei's "conscience." But, however the court might have characterized the statement, it was the officer's thought that was communicated by him to Mrs. Kahoonei. . . .

> Within this factual context . . . , I see no relevance to an analysis of Mrs. Kahoonei's motivation. It is at best a speculative venture which may leave the mistaken impression that under these or similar facts a private person's implied motivation may somehow vitiate the precipitating conduct of the police.

*Kahoonei I*, concurring op. at —— – ——, 925 P.2d at 393–394.

### B. *Affirming the ICA's Result on Different Grounds*

■ Based on our review, we agree with the result reached by the ICA; however, we specifically disapprove *Kahoonei I* to the extent that it misconstrues the correct test to be employed when determining whether a private individual who conducts a search and seizure of evidence is a government agent. To that extent, we agree with the rationale of the concurring opinion that the motivation of a private individual is not relevant when de-

termining whether such individual is a government agent.[5]

### 1. The Correct Test

■ In *State v. Meyer,* 78 Hawai'i 308, 893 P.2d 159 (1995), we stated that

[b]oth the fourth amendment to the United States Constitution[6] and article I, section 7 of the Hawai'i Constitution[7] ensure that an individual's legitimate expectations of privacy will not be subjected to unreasonable *governmental* intrusions. . . . The basic purpose of these constitutional provisions is to safeguard the privacy and security of individuals against arbitrary invasions by *government* officials.

*Id.* at 311–12, 893 P.2d at 162–63 (citations, internal quotation marks, internal brackets, and some ellipses omitted) (emphases added). As illustrated by the aforementioned language, the purpose of the fourth amendment and article I, section 7 is to protect individuals against intrusions by the *government.* *See also Furuyama,* 64 Haw. at 120, 637 P.2d at 1102 ("The Fourth Amendment['s] protection applies to governmental action." (Citation omitted.)).

Thus, if Mrs. Kahoonei was acting as a private individual, any evidence she obtained may be properly admitted. *See Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2048–49, 29 L.Ed.2d 564 (1971) (holding that, if private persons act wholly on their own initiative, evidence turned over to police is admissible), *reh'g denied,* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971); *People v. Horman,* 22 N.Y.2d 378, 292 N.Y.S.2d 874, 239 N.E.2d 625, 628 (1968), *cert. denied,* 393

U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969) ("[S]ince the evidence in this case was seized without the participation or knowledge of any governmental official, it is admissible in a criminal prosecution."). However, if Mrs. Kahoonei was acting as an agent of the government, the proscriptions of the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution would apply. *See Furuyama,* 64 Haw. at 120, 637 P.2d at 1102; *see also Skinner v. Railway Labor Executives' Assn.,* 489 U.S. 602, 614, 109 S.Ct. 1402, 1411–12, 103 L.Ed.2d 639 (1989) ("[The Fourth] Amendment protects against [searches and seizures] if [a] private party acted as an instrument or agent of the Government.").

In deciding Mrs. Kahoonei's "role," the ICA, as previously stated, relied on *Boynton* and enumerated four factors that it believed required examination in determining whether a "symbiotic" relationship existed between the police and Mrs. Kahoonei. The *Boynton* court, however, specifically stated that,

[i]n defining a private search, the Supreme Court has stated that the fourth amendment applies only if the private party, *in light of all circumstances of the case,* must be regarded as having acted as an instrument or agent of the state. Application of this definition will frequently require a careful factual analysis.

*Boynton,* 58 Haw. at 536, 574 P.2d at 1334 (citations and internal quotation marks omitted) (emphasis added).

■ By limiting its analysis to the four *Boynton* factors and relying heavily on the

---

5. We note that we concur with the majority in *Kahoonei I* that a private individual may be deemed a government agent due to irregularities in the search warrant process, or that, under the totality of the circumstances, a search and seizure may be valid when a private individual, with a clear understanding of the discretionary nature of the search warrant process, elects to undertake a search and retrieve evidentiary items completely of their own accord.

6. The fourth amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

7. Article I, section 7 of the Hawai'i Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

motivation of the private individual, the ICA misinterpreted the correct test to be applied in determining whether Mrs. Kahoonei acted as a private individual or as a government agent. We recognize that, when determining whether a private individual is a government agent under article I, section 7 or the fourth amendment, there is no bright-line rule of application. Instead, we must examine the totality of the circumstances to determine whether the governmental involvement is significant or extensive enough to objectively render an otherwise private individual a mere arm, tool, or instrumentality of the state. In so doing, we focus on the actions of the government, because, as discussed *infra*, the subjective motivation of a private individual is irrelevant. Our decision in *Boynton* remains good law to the extent that it enumerates some of the relevant factors that may be considered in a totality of the circumstances inquiry. However, because *Kahoonei I* may potentially mislead other courts and because we recognize "that in retrospect our pronouncements are sometimes more enigmatic than we would wish," *State v. Schroeder*, 76 Hawai'i 517, 524, 880 P.2d 192, 199 (1994), we now explicitly hold that the correct test for determining whether a private individual is a government agent is the "totality of the circumstances test."

Requiring a private individual's search and seizure of evidentiary items to be subject to a totality of the circumstances inquiry calls for an examination of all relevant government actions. State courts in other jurisdictions have also determined that an examination of all attendant circumstances is the most accurate method of determining whether a private individual acted as a government agent. For example, in *State v. Knudsen*, 500 N.W.2d 84 (Iowa.Ct.App.1993), the Iowa Court of Appeals observed that

> the Iowa Supreme Court [has] set out some guidelines for determining whether a private citizen should be considered an agent of the state:
>
> > Whether a private citizen has become an agent or instrument of the state depends on the *total circumstances* surrounding the challenged conduct.

*Id.* at 86 (emphasis added). In *Knudsen*, there was testimony that, *inter alia*, the police officer was unaware of the private citizens' conduct at issue, did not anticipate their actions, and was completely removed from the area. The court held that, "[c]onsidering *the totality of the circumstances*, the trial court did not err in finding [that the private citizens] had not acted as an instrument ... of the state[.]" *Id.* (emphasis added). *See also People v. Aguilar*, 897 P.2d 84, 85 (Colo.1995) ("The resolution of whether an individual becomes such an 'agent' of the police is determined by the totality of the circumstances." (Citations omitted.)); *Burk v. State*, 848 P.2d 225, 234 (Wyo.1993) (holding that a private individual's actions were voluntary "in light of all of the circumstances"); *State v. Sanders*, 327 N.C. 319, 395 S.E.2d 412, 422 (1990) ("[W]e conclude that determining whether a private citizen's search or seizure is attributable to the State and therefore subject to constitutional scrutiny demands a totality of the circumstances inquiry.").

### 2. Motivation is Irrelevant

As previously stated, we agree with the concurring opinion that Mrs. Kahoonei's motivation for retrieving the evidence at issue is irrelevant to an analysis of whether she was acting as a government agent at the time she seized the handgun and ammunition from Kahoonei's bedroom. As aptly stated by Judge Acoba, such an examination "is at best a speculative venture which may leave the mistaken impression that under these or similar facts a private person's implied motivation may somehow vitiate the precipitating conduct of the police." *Kahoonei I*, concurring op. at ——, 925 P.2d at 393.

In our view, a private individual's subjective motivation would not address the fundamental concern of either the fourth amendment to the United States Constitution or article I, section 7 of the Hawai'i Constitution, that is, to curb unconstitutional activity by *government* agents. These constitutional provisions are not concerned with the subjective motivation of private individuals such as Mrs. Kahoonei. In other words, the focus of the inquiry is necessarily on the actions of the police officers; Mrs. Kahoonei's subjec-

tive reasons for participating in the search and seizure is irrelevant.

■ A private individual may be a government agent, even if he or she is acting for personal reasons. Likewise, private individuals may be acting on their own, even if they erroneously believe they are acting as an agent of the police. For example, even if Mrs. Kahoonei's motivation in retrieving the gun was out of concern that the firearm might injure a member of her household, under the totality of the circumstances in this case, such concern would not excuse the action of the police if their conduct was significant or extensive enough to objectively render Mrs. Kahoonei a mere arm, tool, or instrumentality of the state.

We note that the federal courts continue to consider the motivation of the private person when determining if an individual is a government agent.[8] However, "[a]s the ultimate judicial tribunal in the state, this court possesses the final and unreviewable authority to interpret and enforce the Hawai'i Constitution." *State v. Lopez,* 78 Hawai'i 433, 445, 896 P.2d 889, 901 (1995) (citations omitted). In *Lopez,* we observed that, "[i]n the area of searches and seizures under article I, section 7, we have often exercised this freedom." *Id.* Unlike the exclusionary rule on the federal level, Hawai'i's exclusionary rule serves not only to deter illegal police conduct, but to protect the privacy rights of our citizens. *Id.* Eliminating consideration of the subjective motivation of a private individual will serve to guard the privacy rights of Hawai'i's citizens against illegal government conduct— regardless of what a potential agent believes his or her role may be in conducting a search and seizure of evidentiary items.

■ We therefore hold that, when determining whether, under the totality of the circumstances, governmental involvement in

a particular instance is significant or extensive enough to render an otherwise private individual a mere arm, tool, or instrumentality of the state, the subjective motivation of the private actor is not a relevant concern under article I, section 7 of the Hawai'i Constitution.

### 3. Mrs. Kahoonei Was a Government Agent

■ Under the totality of the circumstances of this case, we hold that Mrs. Kahoonei was acting as a government agent when she retrieved the handgun and ammunition from Kahoonei's bedroom.

It is clear, under the facts of this case, that the idea of retrieving the evidentiary items did not originate with Mrs. Kahoonei. It is undisputed that Sergeant Lenchanko told Mrs. Kahoonei and Tamanaha that a search warrant "could be gotten to search the house" and that a search "would be done anyway." We agree with Judge Acoba that "[i]t is obvious the purpose of the police statements was to convince the two women to retrieve the gun for the police without the aid of a warrant, thus absolving the police of any possible illegality in the recovery of the gun." *Kahoonei I,* concurring op. at ——, 925 P.2d at 393. Most importantly, when officer Akina accompanied Mrs. Kahoonei to Kahoonei's bedroom and stood in the doorway watching her retrieve the handgun and ammunition, officer Akina knew that Mrs. Kahoonei was engaging in an activity that a police officer could not effect without a search warrant. *See Alston v. United States,* 518 A.2d 439, 442 (D.C.App.1986) ("A private individual may become an agent or instrumentality of the state ... if the government is involved in the development of a plan which is later carried out by private persons, or *stands by while a private citizen seizes*

---

8. *See United States v. McAllister,* 18 F.3d 1412, 1417 (7th Cir.1994) (holding that determining if a private individual acted as a government agent involves examining " 'whether the government knew of and acquiesced in the intrusive conduct,' and secondly 'whether the private party's purpose ... was to assist law enforcement efforts or to further his [or her] own ends.' " (Quoting *United States v. Feffer,* 831 F.2d 734, 739 (7th Cir.1987))); *United States v. Young,* 620 F.Supp.

79, 80 (D.C.Colo.1985) (citing two factors "that are critical in determining whether a private party was acting as an instrument or agent of the government: 1) the government's knowledge or acquiescence[;] and 2) the intent of the party performing the search." (Citing *United States v. Walther,* 652 F.2d 788, 792 (9th Cir.1981))); *United States v. Sullivan,* 544 F.Supp. 701, 708 (D.Maine 1982) (quoting *Walther* ).

*the desired evidence.*" (Citations, internal quotation marks, and internal brackets omitted.) (Emphasis added.)); *People v. North,* 29 Cal.3d 509, 174 Cal.Rptr. 511, 514, 629 P.2d 19, 22 (1981) ("[T]he police need not have requested or directed the search in order to be guilty of standing idly by; *knowledge* of the illegal search *coupled* with a failure to protect [a defendant's] rights against such a search suffices." (Citation and internal quotation marks omitted.) (Emphasis in original.)).

In this case, the police were standing by while a private individual engaged in a search that the police would otherwise need a warrant to effectuate. In our view, under the totality of the circumstances, the governmental involvement was significant and extensive enough to render Mrs. Kahoonei an instrumentality of the state. Thus, regardless of her subjective motivation, Mrs. Kahoonei was acting as an agent of the police. *See People in Interest of P.E.A.,* 754 P.2d 382, 385 (Colo.1988) ("The agency rule prevents police from circumventing the fourth amendment by having a private individual conduct a search or make a seizure that would be unlawful if performed by the police themselves." (Citation omitted.)).

Under the circumstances of this case, we believe it was incumbent upon the police to obtain a search warrant rather than utilize a private citizen. *See Moody v. United States,* 163 A.2d 337, 340 (D.C.Mun.App.1960) ("The officer certainly recognized the evidentiary value of the goods themselves. He could not therefore escape the necessity of obtaining a search warrant[.]"). To hold otherwise would needlessly erode one of the fundamental objectives of the fourth amendment and article I, section 7 of the Hawai'i Constitution, that is, to deter government agents from bypassing the warrant requirement.

### III.  *CONCLUSION*

Based on the foregoing, we hold that determining whether a private individual's search and seizure of evidentiary items is attributable to the state and therefore subject to constitutional scrutiny requires a totality of the circumstances inquiry and that the subjective motivation of such individual is irrelevant to such determination. Under the totality of the circumstances of this case, we hold that Mrs. Kahoonei was acting as a government agent when she retrieved the handgun and ammunition from Kahoonei's bedroom; accordingly, Kahoonei's motion to suppress the evidence should have been granted. We therefore affirm the result reached by the ICA in *Kahoonei I:* (1) reverse the denial of the motion to suppress; (2) affirm the judgment with respect to the harassment conviction; (3) vacate the judgment with respect to the two counts of illegal firearms possession; and (4) remand for new trial.