**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-22-0000006**
**21-OCT-2022**
**08:01 AM**
**Dkt. 65 SO**

NO. CAAP-22-0000006

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
WILLIAM TOOHER, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1CPC-20-0000981)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Chan, JJ.)

In this interlocutory appeal, Defendant-Appellant William Tooher (**Tooher**) appeals from the: (1) Findings of Fact (**FOFs**), Conclusions of Law (**COLs**) and Order Denying Defendant's Motion to Dismiss for Destruction of Evidence and Tampering with Evidence entered on October 15, 2021 (**FOFs, COLs, and Order Denying Motion to Dismiss**); and (2) Findings of Fact, Conclusions of Law and Order Denying Defendant's Second Motion to Suppress Evidence entered on October 15, 2021 (**FOFs, COLs, and Order**

**Denying Second Motion to Suppress**), both entered by the Circuit Court of the First Circuit (**Circuit Court**).[1]

Tooher raises two points of error on appeal, contending that the Circuit Court erred in entering:  (1) the FOFs, COLs, and Order Denying Motion to Dismiss, specifically FOFs 8, 9, 14, 15, 16, and 17, and COLs 3, 5, 6, 7, 9, 10, and 11; and (2) the FOFs, COLs, and Order Denying Second Motion to Suppress, specifically FOFs 6, 7, 9(a-f), 10, 11(a-g), and 12, and COLs 8 (a-h), 9, and 10.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, as well as the relevant legal authorities, we resolve Tooher's points of error as follows:

(1)  Tooher argues that his right to a fair trial has been compromised because exculpatory evidence from both a video surveillance system and Tooher's cellular phone was lost or destroyed while in the actual or constructive possession of the Honolulu Police Department (**HPD**).

In some instances, the government's failure to preserve evidence can violate a defendant's due process rights.  In Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988), the United States Supreme Court evaluated the due process implications of the prosecution's inadvertent loss or destruction of potentially

---

[1]    The Honorable Kevin A. Souza presided.

exculpatory evidence that law enforcement had collected.  The Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  Id. at 58.

The Hawaiʻi Supreme Court reviewed and refined Youngblood's protections in State v. Matafeo, 71 Haw. 183, 787 P.2d 671 (1990), where it evaluated whether the destruction of evidence implicated the defendant's opportunity to present a complete defense where there was no showing of bad faith by the government.  Id. at 185, 787 P.2d at 672.  In Matafeo, the defendant, who was charged with kidnapping and sexual assault, filed an interlocutory appeal from the trial court's denial of his motion to dismiss stemming from the inadvertent destruction of evidence by the police.  Id. at 183-84, 787 P.2d at 671-72. Due to a mistake in the HPD records department, HPD destroyed physical evidence related to Matafeo's case, including the complainant's panties with a ripped crotch.  Id. at 184, 787 P.2d at 672.  Matafeo argued that the complainant's clothing was material evidence favorable to him, as it corroborated his defense that the sex was consensual, and thus its destruction violated his right to due process under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.  Matafeo, 71 Haw. at 185, 787 P.2d at 672.

The supreme court held that in Hawaiʻi, "[i]n certain circumstances, regardless of good or bad faith, the State may lose or destroy material evidence which is 'so critical to the defense as to make a criminal trial fundamentally unfair' without it." Id. at 187, 787 P.2d at 673 (citation omitted). However, the supreme court held that the complainant's clothing in that case did not rise to such a level as to make a criminal trial fundamentally unfair without it. Id. The supreme court reasoned, *inter alia*, that testimony and a description of the garments did not support a reasonable inference that the condition of the garments would have favored the defense, that the State had disclosed the evidence report and other records relating to the destruction of the evidence, and that Matafeo would be able to cross-examine the State's witnesses on the condition of the clothing. Id. at 187-88, 787 P.2d at 673-74.

Since Matafeo, Hawaiʻi appellate courts have consistently held that speculative prejudice to a defendant does not automatically trigger due process relief. See, e.g., State v. Diaz, 100 Hawaiʻi 210, 225-26, 58 P.3d 1257, 1272-73 (2002) (holding that there was no due process violation where the defendant failed to demonstrate how a copy of a police officer's lost report was material to her guilt or innocence); State v. Barnes, No. CAAP-16-0000541, 2019 WL 3526425, at *6-7 (App. Aug. 2, 2019) (SDO) (in a case involving shoplifting, holding that the defendant-appellant's argument that lost security footage from

4

the scene went to the asset protection investigator's credibility was too speculative because it was unclear whether the evidence would benefit either party); State v. Steger, 114 Hawaiʻi 162, 170, 158 P.3d 280, 288 (App. 2006) (holding that the loss of photographs of the crime scene did not violate the defendant-appellant's due process rights because, *inter alia*, the defendant-appellant had never seen the photographs and a police officer testified that at least one would have corroborated the charges).

Failure to preserve evidence can violate a defendant's due process rights when the harm is identifiable, and not merely speculative. See State v. Dunphy, 71 Haw. 537, 542-44, 797 P.2d 1312, 1315-16 (1990). If, however, a trial court determines that the lost or destroyed evidence is not so critical to a defense that lack of the evidence would not render a criminal trial fundamentally unfair, the trial court has the authority to fashion an appropriate remedy. See State v. Alkire, 148 Hawaiʻi 73, 91, 468 P.3d 87, 105 (2020).

Here, the Circuit Court found that there was no bad faith on the part of HPD. This determination is supported by the Circuit Court's FOFs.

Tooher challenges FOFs 8, 9, 14, 15, 16, and 17 and COLs 3, 5, 6, 7, 9, 10, and 11 of the FOFs, COLs, and Order Denying Motion to Dismiss. The Circuit Court's FOF 8 found that property manager/landlord Glenn Martinez (**Martinez**), had entered

Tooher's cabin without the knowledge or direction of HPD Detective Chadwick Lee (**Detective Lee**) or HPD Corporal Cory Shiraishi (**Corporal Shiraishi**).[2]  FOF 9 found that Martinez gave a handwritten note to Detective Lee, but may have kept Tooher's cellular phone.  FOF 14 found that Detective Lee's decision to retrieve only portions of the available video footage was made in good faith and after reviewing all of the available footage.  In FOF 15, the Circuit Court acknowledged that it was "conceivable" that Martinez removed and disposed of Tooher's cellular phone, but even if he did so, it was without the knowledge, authorization, or approval of HPD.  These FOFs were supported by Detective Lee and Corporal Shiraishi's testimony, which the Circuit Court found credible.[3]  In FOFs 16 and 17, the Circuit Court found that Tooher presented no evidence, only vague assertions, as to what specific exculpatory information was contained on the missing cellular phone.

---

[2]      In FOF 14, the Circuit Court found, in part, that HPD Detective Lee and HPD Corporal Shiraishi's testimony was credible and reliable.  To the extent that Tooher invites this court to evaluate the credibility of the witnesses, we decline.  It is axiomatic that "[a]n appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge." State v. Kwong, 149 Hawaiʻi 106, 112, 482 P.3d 1067, 1073 (2021) (quoting State v. Eastman, 81 Hawaiʻi 131, 139, 913 P.2d 57, 65 (1996)).

[3]      Tooher points out conflicting statements by Martinez and Detective Lee regarding the location of Tooher's cellular phone and urges this court to interpret these conflicting statements as "unassailable [evidence] that [Martinez] absolutely, ***not*** allegedly, took the Cell Phone[.]"  These inconsistencies were properly the subject of cross-examination, but they do not render the Circuit Court's FOFs clearly erroneous.

The challenged FOFs were supported by the evidence before the Circuit Court at the time of the court's ruling, although Tooher later presented some evidence in his Motion to Reconsider the Motion to Dismiss in the form of a declaration from Tooher and documents from his civil action against Martinez. However, Tooher's declaration did not identify what exculpatory evidence was allegedly contained on the cellular phone or in the surveillance video. Instead, Tooher stated generally that the cellular phone "contained messages, photos, and videos . . . that exonerate me" and the video surveillance "would have shown anyone outside the front door of my cabin, as well as anyone who entered my cabin while I was in custody." Likewise, Martinez's responses in the civil litigation, including referring to himself as a State witness, did not render FOFs 16 and 17 clearly erroneous.[4]

The Circuit Court's COLs were supported by its FOFs and correctly stated the rule of law. COL 3 accurately summarized the supreme court's holding in Matafeo. COL 5 accurately stated that Tooher did not present any evidence as to what exculpatory communications were contained on his cellular phone.[5] COL 6 was supported by the Circuit Court's finding that Detective Lee and

---

[4] There is evidence in the record that Martinez located Tooher's cellular phone, but there is no clear evidence (a) that Martinez "took" the phone, and/or (b) that Martinez and/or HPD took possession of Tooher's phone.

[5] Even considering the evidence presented in Tooher's Motion to Reconsider the Motion to Dismiss, we conclude that the Circuit Court's COL 5 was correct.

Corporal Shiraishi made the good faith decision to only recover a portion of the footage available and that Tooher did not present any evidence as to the specific exculpatory information allegedly contained on the overwritten video footage. In COLs 7, 9, 10, and 11, the Circuit Court applied the applicable case law to its FOFS and concluded that the loss of the video surveillance footage and Tooher's cellular phone were not "so critical to [Tooher's] defense as to make a criminal trial fundamentally unfair without it." We conclude that the Circuit Court's COLs are supported by its FOFs, that it applied the correct rule of law, and accordingly, the FOFs and COLs will not be overturned.

(2) Tooher also argues that the handwritten note should be suppressed because Martinez and Detective Lee conspired to enter and search Tooher's cabin, and that Martinez did so as an agent of the State. To support his argument, Tooher relies, *inter alia*, on Martinez's responses in Tooher's civil action against him. Tooher specifically argues that the following is evidence of Martinez's role as an agent of the State:

> So, the responsibility [to care for Tooher's dogs after his arrest] went to Glenn Martinez, who contacted the police and explained the situation. It was decided to invite William Tooher's sister Christine or friend Kathleen Connor to take the dogs. Christine originally, agreed and it was okay by the police.

The Fourth Amendment protects individuals against unreasonable searches and seizures by the government or its agents. State v. Boynton, 58 Haw. 530, 534-35, 574 P.2d 1330, 1333-34 (1978). "[W]here private individuals 'act as agents of

8

the police . . . the full panoply of constitutional provisions and curative measures applies.'" State v. Kahoonei, 83 Hawaiʻi 124, 127, 925 P.2d 294, 297 (1996) (quoting Boynton, 58 Haw. at 536, 574 P.2d at 1334)). In determining whether a private individual acted as an agent of the government, courts consider the totality of the circumstances and examine the relevant government actions to determine whether government actions rendered the "otherwise private individual a mere arm, tool, or instrumentality of the state." Id. at 130, 925 P.2d at 300. As part of the totality of the circumstances analysis, courts consider several factors, "including whether the private individual: (1) was actively recruited by a governmental agency to assist in its investigations; (2) was directed by a government agent; (3) acted for a private purpose; and (4) received any payment for his or her services." State v. Locquiao, 100 Hawaiʻi 195, 204, 58 P.3d 1242, 1251 (2002) (citing Kahoonei, 83 Hawaiʻi at 127, 925 P.2d at 297)).

In Kahoonei, the supreme court held that the defendant's wife was an agent of the government when she retrieved a handgun and ammunition from Kahoonei's bedroom. Kahoonei, 83 Hawaiʻi at 131, 925 P.2d at 301. There, police told Kahoonei's wife that a search warrant "could be gotten to search the house" and that a search "would be done anyway." Id. The supreme court highlighted that when a police officer "accompanied Mrs. Kahoonei to Kahoonei's bedroom and stood in the doorway

watching her retrieve the handgun and ammunition, [the officer] knew that Mrs. Kahoonei was engaging in an activity that a police officer could not effect without a search warrant." Id.; see also Boynton, 58 Haw. at 536-37, 574 P.2d at 1334-35 (holding that an informant recruited and paid by police was an agent of the government when he trespassed on the defendant-appellee's property and searched an area of their property enclosed by a high fence).

Private individuals are not, however, government agents when they act on their own initiative. State v. Araki, 82 Hawaiʻi 474, 481, 923 P.2d 891, 898 (1996). In Araki, the defendant rented explicit adult videos to minors. Id. at 476, 923 P.2d at 893. One of the minors' mother "acting on her own initiative, secured the videotape and voluntarily transferred its possession to the police," and as such, "there was no seizure within the meaning of the fourth amendment." Id. at 481, 923 P.2d at 898; see also Coolidge v. New Hampshire, 403 U.S. 443, 488-89 (1971) (holding that the suspect's wife was not an agent of the government where the police asked her whether guns were in the home and the wife responded affirmatively, then offered to let the police take the guns and various articles of her husband's clothing).

Similarly, in Locquiao, the defendant entered a local pool hall and walked directly into the single-stall bathroom. Locquiao, 100 Hawaiʻi at 199, 58 P.3d at 1246. Young Soo Kim

(**Kim**), the owner of the pool hall, followed him, demanded he open the door, and observed Locquiao put an item in his pocket.  Id.  Kim discovered the item was a glass pipe, detained Locquiao, and called the police.  Id.  Locquiao moved to suppress the evidence and argued that Kim had previously entered into a plea agreement with the Honolulu Department of the Prosecuting Attorney that required Kim to actively assist law enforcement agencies in any narcotics investigation.  Id. at 200, 58 P.3d at 1247.  At a hearing on the motion to suppress, Kim testified that he had voluntarily detained Locquiao "as an American citizen," not in his role as an informant.  Id.  The HPD officer who handled Kim as an informant additionally testified that Kim had terminated all contact with HPD prior to the incident, that he had acted "strictly on his own," that he had not requested nor received money in exchange for his actions, and that Kim's role as an informant focused on large-scale drug operations, not small possession cases.  Id.

The supreme court held that "Kim's actions in detaining and searching Locquiao were private in nature and, therefore, immune from constitutional scrutiny."  Id. at 204-05, 58 P.3d at 1251-52.  In doing so, it reasoned that Kim was in breach of his plea agreement when he detained Locquiao, he did not inform his HPD handler of his actions until nearly one month after the incident, and therefore it was "simply not possible that Kim's detention and search of Locquiao was directed by a government

11

agent pursuant to Kim's plea agreement."  Id. at 205, 58 P.3d at 1252.

Here, the Circuit Court evaluated the totality of the circumstances and found that Martinez was not rendered "a mere arm, tool, or instrumentality of the state."  The Circuit Court's FOFs 6, 7, 9, and 11 in the FOFs, COLs, and Order Denying Second Motion to Suppress (and their subparagraphs) were supported by substantial evidence that is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.[6]  See State v. Yamashita, 151 Hawai'i 390, 396-97, 515 P.3d 207, 213-14 (2022).  Detective Lee and Corporal Shiraishi testified that they did not direct Martinez to enter Tooher's cabin.  Both HPD officers additionally testified that they did not direct Martinez to recover evidence on behalf of HPD.  The only direction that Martinez received from HPD was related to HPD's recovery of footage from the subject video surveillance system.  And while Tooher attempts to characterize Martinez's cooperation with HPD as evidence of Martinez being a State agent, the cooperation in this case does not render Martinez "a mere arm, tool, or instrumentality of the state." See Locquiao, 100 Hawai'i at 205, 58 P.3d at 1252.

---

[6]     In FOFs 10 and 12, the Circuit Court found Detective Lee and Corporal Shiraishi's testimony credible.  We again decline to pass upon the trial judge's decisions with respect to witness credibility and the weight of the evidence.  Kwong, 149 Hawai'i at 112, 482 P.3d at 1073.

COLs 8 (including its subparagraphs), 9, and 10 were supported by the FOFs and correctly applied the rule of law. The Circuit Court distinguished this case from <u>Kahoonei</u>. In COL 8, the Circuit Court evaluated the totality of the circumstances and applied the <u>Kahoonei</u> factors to the immediate case. In COLs 9 and 10, the Circuit Court concluded that, based on the totality of the circumstances, Martinez acted "on his own accord" and had not been rendered "a mere arm, tool, or instrumentality of the state," and thus did not act as an agent of the State. We conclude that the Circuit Court's COLs were supported by its FOFs and the application of the correct rule of law.

For these reasons, we affirm the Circuit Court's October 15, 2021 FOFs, COLs, and Order Denying Motion to Dismiss and October 15, 2021 FOFs, COLs, and Order Denying Second Motion to Suppress.

DATED: Honolulu, Hawaiʻi, October 21, 2022.

On the briefs:

Myles S. Breiner,
Kyle T. Dowd,
Sean Fitzsimmons,
(Law Offices of Myles S.
  Breiner & Associates),
for Defendant-Appellant.

Donn Fudo,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Derrick H.M. Chan
Associate Judge