STATE OF HAWAII, Plaintiff-Appellant, *v.* LUCINDA BOYNTON, Defendant-Appellee

NO. 5912

and

STATE OF HAWAII, Plaintiff-Appellant, *v.* ANDY UTSAL, Defendant-Appellee

NO. 5913

JANUARY 24, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

Each of the defendants-appellees Lucinda Boynton and Andy Utsal (hereinafter appellees) had been charged in two separate three-count indictments returned by the Maui Grand Jury for the alleged offenses of promoting detrimental drugs in the second degree in violation of Sec. 712-1248(1)(c)[1]

---

[1] Sec. 712-1248(1)(c) of the Hawaii Revised Statutes was enacted by Act 9, S.L.H. 1972, and reads:

Sec. 712-1248-Promoting a detrimental drug in the second degree.

(1) A person commits the offense of promoting a detrimental drug in the second degree if he knowingly and unlawfully:

\* \* \* \* \*

(c) Possesses one or more preparations, compounds, mixtures, or substances, of an aggregate weight of 1 ounce or more, containing any marijuana; or

\* \* \* \* \*

of the Hawaii Revised Statutes, promoting a harmful drug in the third degree in violation of Sec. 712-1246(1)[2] of the Hawaii Revised Statutes, and promoting a dangerous drug in the third degree in violation of Sec. 712-1243(1)[3] of the Hawaii Revised Statutes. On February 22, 1975, appellees were co-tenants of a dwelling and surrounding curtilage, which were searched by police officers under a warrant. From that search, the police recovered a cache of lysergic acid diethylamide (L.S.D.), hashish oil, and marijuana plants and seedlings. The state appeals from the trial court's orders granting appellees' motions to suppress the evidence alleged to have been illegally seized.[4] Because the facts and legal issues involved in each case are identical, we have approved a stipulation that these appeals be consolidated for purposes of argument, opinion and decision.

The relevant facts are undisputed. On February 21, 1975 a confidential informant known to Officer Solomon Lee, Jr. (hereinafter officer) of the Maui Police Department's vice division spoke to the officer. The informant related to the officer that he went to 297 Moi Place, Kihei, Maui, during the day time, and at that address climbed a high fence surrounding an enclosure adjoining the appellees' residence which

---

[2] Sec. 712-1246(1) of the Hawaii Revised Statutes was also enacted by Act 9, S.L.H. 1972, and reads:

    Sec. 712-1246-Promoting a harmful drug in the third degree.

    (1) A person commits the offense of promoting a drug in the third degree if he knowingly and unlawfully possesses any harmful drug in any amount.

[3] Sec. 712-1243(1) of the Hawaii Revised Statutes was also enacted by Act 9, S.L.H. 1972, and reads:

    Sec. 712-1243-Promoting a dangerous drug in the third degree.

    (1) A person commits the offense of promoting a dangerous drug in the third degree if he knowingly and unlawfully possesses any dangerous drug in any amount.

This section 712-1243(1), as well as sections 712-1248(1) and 712-1246(1) mentioned supra, and in footnotes 1 and 2, were amended by Act 163, S.L.H. 1975, effective on June 2, 1975. Act 163, S.L.H. 1975, deleted from each of these subsections the words "and unlawfully."

[4] Appellee Utsal filed his motion to suppress on April 24, 1975. Thereafter, on the same date, Appellee Boynton filed her motion to join with appellee Utsal's motion to suppress. These motions were heard together on May 9, 1975 and the court below granted each of the motions on May 23, 1975.

permitted him to see two one-foot high marijuana bushes. The fence was constructed of wood planks which overlapped and effectively prevented peeking through the cracks between the boards. We estimate from photographic exhibits in the record that the fence was at least six and a half feet high. That evening the officer accompanied by the informant went to Kihei, Maui, and the informant showed the officer the location of the fence. While the officer did not himself climb the fence, the informant told him that he had to climb the fence to see the marijuana plants behind the wall. The record further contains the admission by the state that the informant had trespassed upon land occupied by appellees in order to climb the fence. A search warrant was obtained and executed the following day.

The identity of the informant remains undisclosed. At the hearing on the motions to suppress, the officer testified that about a year before the instant arrests, he approached the informant for information relative to drugs; the informant inquired of the officer what consideration he would receive in return, to which the officer replied, "There's some money involved if you get some information. . . . We have a fund for cases made." The officer further testified that the informant was paid out of a Law Enforcement Assistance Administration (L.E.A.A.) account. The informant received a receipt for the amount paid to him for information used. He understood that the usual departmental practice was to pay the informants after the suspect was arrested; they would be paid only for precise information leading directly to an arrest or for important leads. The informant herein was not paid for all the information he gave the officer and was not guaranteed payment even for good information. He was paid $30.00 for the information relating to the instant case and had been paid an aggregate of approximately $100.00 over the one year period he had been working for the officer.

At the time appellees were indicted, the informant was on probation. Although he had been gainfully employed sometime during the year prior to the search in controversy, we are unable to determine from the record whether the informant's only source of income in February, 1975 was the money he

derived from the L.E.A.A. account. On a prior occasion the officer had orally chastised the informant for supplying information on marijuana cultivation which the informant obtained by trespassing upon property. The information on that occasion was not used and the informant was not paid therefor.

Nothing in the record indicates that the officer specifically directed the informant to search the appellees' premises. The officer testified that the informants rather than the officers initiated action upon a lead as a matter of departmental policy.

Appellant-state has conceded that the evidence obtained by the informant and used by the state in its affidavit for the search warrant is subject to the exclusionary rule if the informant had been a police officer. The appellant-state, however, contends that the evidence complained of should not have been suppressed by the trial court because the fourth amendment protection against unreasonable searches and seizures applies to action attributable to the government. Appellant argues that searches performed by private persons, such as by the instant informant, are not subject to the fourth amendment's proscription. In *Burdeau v. McDowell* 256 U.S. 465 (1921), a private person, agent of defendant's employer, broke into defendant's personally owned desk and seized incriminating evidence. The employer sent the evidence to the Department of Justice officers who did not have knowledge of the taking until the stolen papers were given to them. In refusing to condemn the government's use of the privately seized evidence, the Court stated at 475[5] that

> [t]he Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to governmental action. Its origin and history clearly shows that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the Fourth Amendment to

---

[5] Brandeis and Holmes, JJ., dissenting.

secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued.

The *Burdeau* rationale is still the view of the United States Supreme Court. *United States v. Janis,* 428 U.S. 433, 455 n. 31 (1976) *in dictum.*

The appellees argue that the informant's search of the area within their residence enclosed by the high fence was unreasonable and in violation of their rights protected by the fourth amendment to the United States Constitution and, additionally, article I, section 5 of the Hawaii State Constitution. Summarily stated, the appellees' position is that searches against which the fourth amendment protects are applicable to the several states by the fourteenth amendment due process clause. *Wolf v. Colorado,* 338 U.S. 25 (1949). A subsequent search even under warrant based upon the evidence obtained in the former tainted search is also tainted. *State v. Kitashiro,* 48 Haw. 204, 397 P.2d 558 (1964); *see Wong Sun v. United States,* 371 U.S. 471 (1963). Evidence seized in a tainted search is subject to a motion to suppress if it is to be used in a criminal prosecution. *Mapp v. Ohio,* 367 U.S. 643 (1961); *State v. Pokini,* 45 Haw. 295, 367 P.2d 499 (1961).

We stated earlier this term in *State v. Stachler,* 58 Haw. 412, 570 P.2d 1323 (1977), that a governmental intrusion into matters in which an individual possesses a "reasonable expectation of privacy" is a search within the meaning of the fourth amendment. *United States v. Katz,* 389 U.S. 347 (1967). In *Stachler,* we held a warrantless aerial observation of a defendant's open field marijuana patch from a helicopter flying at a reasonable height to not be a search within the constitutional definition because the marijuana was in "open view." Because the patch was "open and visible to members of the public," the defendant could not have had a reasonable expectation of privacy therein. In analyzing the reasonableness of the defendant's expectation of privacy we said that it was not reasonable to expect privacy from aerial view in open field crops because society as a whole would not find such an expectation reasonable. In contrast, the fence surrounding the curtilage concealed the growing marijuana within from

open view in the case before us. Because of its lapped construction, the fence rendered observation through it practically impossible, and the expectation that the contents of the enclosure would not be seen by ground observers was objective and therefore reasonable. The informant's trespass and peeking over the fence by climbing it was an intrusion and therefore a search which is protected by the fourth amendment as well as under article I, section 5 of the Hawaii State Constitution if performed by a police officer.

Our task in the instant case is to determine whether the informer's search of the enclosed area was a private search or a governmental search. It has been held that where a search is physically conducted by a private individual but only at government's initiation and under their guidance it is not a private search. *Corngold v. United States,* 367 F.2d 1 (9th Cir. 1966) (en banc); *United States v. Newton,* 510 F.2d 1149 (7th Cir. 1975). Further that where civilians "act as agents of the police . . . the full panoply of constitutional provisions and curative measures applies." *People v. Esposito* 37 N.Y.2d 156, 160, 371 N.Y.S.2d 681, 685, 332 N.E.2d 863, 866 (1975). We must, however, decide that searches, not so clearly governmental, be based according to the extent of the governmental participation involved. We hesitate in stating a definitive rule as to what elements would constitute an agency relationship between a confidential informant and the police.

> In defining a private search, the Supreme Court has stated that the fourth amendment applies only if the private party "in light of all circumstances of the case must be regarded as having acted as an 'instrument' or agent of the state." *Coolidge v. New Hampshire, supra,* 403 U.S. at 487, 91 S.Ct. at 2049. Application of this definition will frequently require a careful factual analysis.

*United States v. Sherwin,* 539 F.2d 1, 6 (9th Cir. 1976) (en banc); *United States v. Newton, supra.* Our analysis of the composite of elements indicates to us that an agency relationship existed between the officer and the informant in carrying out his search of the premises.

The most prominent indication of such a relationship is the officer's admission at the motion to suppress hearing that he actively recruited the informant. This situation is analogous to that which faced the Ninth Circuit Court of Appeals in *United States v. Fannon,* 556 F.2d 961 (9th Cir. 1977). Therein, the court held a private air carrier's search to be subject to the Fourth Amendment. Congress passed the Air Transportation Security Act of 1974[6] which authorized air carriers to condition transportation of persons and property on the consent to search. The court stated that "Congress supplanted whatever common law power of search air carriers may have had and subjected such searches to the Fourth Amendment's standard of reasonableness." at 965; *United States v. Davis,* 482 F.2d 893 (9th Cir. 1973); *see Corngold v. United States, supra.* In the case before us, we hold that when the officer approached the informant, requesting drug information and offered to pay for the same, the officer recruited the informant. This recruitment imposed upon the informant the constitutional requirement that is imposed upon the officer's searches. The instant recruitment is analogous to the authority given in *Fannon* by Congress to air carriers to condition transportation upon consent to be searched. The issue of whether the officer specifically directed the informant to search the appellees' residence is irrelevant because the informant was a governmental agent for fourth amendment purposes. The informant herein does not seem to have had a reason for being at the appellees' residence or for searching the area enclosed by the fence which is not inexorably linked to police concerns. The officer's trip with the informant to the premises for the purpose of verifying the information used by this officer in his affidavit especially in light of the prior recruitment seems to us to be strong evidence of the informant's symbiotic relationship with the officer. It further "appears as a matter of law that the [informant] who conducted the search did so neither as a private citizen or for a private purpose." *Dyas v.*

---

[6] Pub. L. No. 93-366, Tit. II, 88 Stat. 415.

*Superior Court,* 11 Cal.3d 628, 633, 114 Cal. Rptr. 114, 118, 522 P.2d 674, 678 (1974).

Moreover, payment made by the government to the informant may be considered with the other surrounding circumstances to determine if an informant was acting as an instrument of the government or if his search must be deemed governmental. *People v. Tarantino* 45 Cal.2d 590, 290 P.2d 505 (1955) (en banc); *Hajdu v. State,* 189 So.2d 230 (Fla. App. 1966); *see* Anno., 36 ALR3d 553, 590. *See also United States v. Luciow,* 518 F.2d 298 (8th Cir. 1975); *United States v. Valen,* 479 F.2d 467 (3d Cir. 1973), *cert. denied,* 419 U.S. 901 (1973).

We distinguish this case from those situations where the informant not having been previously recruited and upon his own initiative approaches the police with information independently but perhaps illegally obtained, where the requirements of the fourth amendment would not apply. Such an informant typified as the "little old lady next door" would be classified ordinarily as a citizen informant, rather than a professional or semi-professional police informant, who is an experienced stool pigeon. *See Loveday v. State,* 74 Wis.2d 503, 247 N.W.2d 116 (1976); *People v. Schulle,* 51 Cal. App.3d 809, 124 Cal. Rptr. 585 (1975).

This is not to say that we do not appreciate the use of informants in crime detection. *Lewis v. United States,* 385 U.S. 206 (1966), *reh. denied,* 386 U.S. 939 (1967); *State v. Texeira,* 50 Haw. 138, 433 P.2d 593 (1967). The United States Supreme Court has long recognized the government's right to prevent the disclosure of an informant's identity. *In re Quarles and Butler,* 158 U.S. 532 (1895);[7] *Roviaro v. United*

---

[7] In that case, the Court stated at 536:

The right of a citizen informing of a violation of law, like the right of the prisoner in custody upon a charge of such violation, to be protected against lawless violence, does not depend upon any of the Amendments to the Constitution, but arises out of the creation and establishment of the Constitution itself of a national government, paramount and supreme within its sphere of action. *United States v. Logan,* 144 U.S. 294. Both are, within the concise definition of the Chief Justice in an earlier case, "privileges and immunities arising out of the nature and essential character of the national government, and granted or secured by the Constitution of the United States." *In re Kemmler,* 136 U.S. 436, 448.

*States,* 353 U.S. 53 (1957).[8] Because the appellant's interest in preserving the informant's anonymity is of a high magnitude, suppression of the fruits of the informant's search rather than the disclosure of his identity is the proper remedy for his breach of the appellees' right of privacy. Because "[i]t is the duty of courts to be watchful for the constitutional rights of the citizens, and against any stealthy encroachment thereon," *Boyd v. United States,* 116 U.S. 616, 635 (1886), *quoted in Coolidge v. New Hampshire,* 403 U.S. 443, 454 (1971), we cannot condone the use by the state of information illegally obtained by a semi-professional police informant whose sole purpose in this kind of endeavor is to gather data to be used in criminal prosecutions. Reversing the lower court's orders would indicate to police informants that they shall be paid rather than punished for breaching the law. We fear that our failure to disapprove the use of information known to have been obtained in breach of the law by recruited police informants would tempt the police to use persons unaffected by the fourth amendment restriction to obtain evidence which they cannot directly obtain. "Constitutional limitations on governmental action would be severely undercut if the government were allowed to actively encourage conduct by 'private' persons or entities that is prohibited to the government itself." *United States v. Davis, supra,* 482 F.2d at 904. We cannot allow the constitutional prohibition to be circumvented in this manner. *Byars v. United States* 273 U.S. 28 (1927). In addition, our failure to affirm the lower court's decision would have the effect of tacitly approving the distribution of state revenues for the fruits of an illegal search.[9]

The appellees urge that we affirm the lower court's orders on the rationale of *State v. Coburn,* 165 Mont. 488, 530 P.2d

---

[8] The Court in *Roviaro* stated at 59:

What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.

[9] So far as we can ascertain from the record, the informant's trespass violated HRS § 708-814(a) or § 708-815 (Special Pamphlet).

442 (1974), wherein the Montana Court held that a search by a private party was subject to the exclusionary rule. Because we have found the informant herein to have been an agent of the Maui Police Department for fourth amendment purposes, we decline to look any further in justifying the imposition of the exclusionary rule to the search complained of herein.

Under the circumstances, we treat and hold the informant to have been an arm of the government. *Dyas v. Superior Court, supra; Stapleton v. Superior Court,* 70 Cal.2d 97, 73 Cal. Rptr. 575, 447 P.2d 967 (1968) (en banc). His manner of searching the appellees' residence was an unreasonable invasion of privacy within the meaning of article I, section 5 of the Hawaii State Constitution and the fourth amendment to the United States Constitution. As a result, the search warrant based upon the information gleaned from the informant's search was tainted. *Wong Sun v. United States, supra.* The trial court acted correctly in suppressing the evidence seized under the tainted warrant.

Affirmed.

*Steven R. Scott,* Deputy County Attorney, County of Maui, for plaintiff-appellant.

*William L. Kohne (Langa & Kohne* of counsel) for defendant-appellee, *Lucinda Boynton.*

*Philip H. Lowenthal,* Deputy Public Defender, for defendant-appellee, *Andy Utsal.*