STATE OF HAWAII, Plaintiff-Appellee, *v.* JOSEPH JEFFERY KENDER, Defendant-Appellant

NO. 6145

DECEMBER 29, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

Defendant-appellant, Joseph Jeffery Kender (hereinafter "Kender" or "appellant") was convicted by the trial court of promoting a detrimental drug in the first degree in violation of HRS § 712-1247(1)(e) (1976) and promoting a detrimental drug in the third degree in violation of HRS § 712-1243 (1976), based upon evidence which the trial court had refused to suppress. The appellant has taken this appeal from the trial court's denial of the motion to suppress.

The events in question took place on October 8, 1975. After receiving a tip that marijuana plants were growing in front of a lean-to in Kender's backyard, Officer Segundo of the Maui Police Department went to Kender's neighbor, Okazaki, and obtained his permission to enter his backyard. There are no neighboring homes except for Okazaki's. The evidence showed that Kender's backyard was not visible from the main road because of the house. The marijuana plants were located in the back of Kender's house, in front of the lean-to, approximately fifty-three feet from the house. One side of the backyard was bordered by a steep hillside which prevented any view of the backyard from the road; another side was blocked with heavy vegetation and on the neighbor's side were banana trees, berry trees, a coconut tree and a thick growth of three to four feet high California grass. A hog wire fence separated Kender's property from Okazaki's. Okazaki maintained a small strip of mowed grass on Kender's side of the fence so that the California grass would not grow onto his land. The distance from Officer Segundo's vantage point in Okazaki's property and the marijuana plants was approximately one-hundred fifty-one feet.

Officer Segundo testified that from his position in Okazaki's yard he could see only the lean-to but could not see the ground area below the lean-to because of the height of the California grass. He further testified that after he saw the lean-to, he climbed three-fourths of the way up the hog wire fence and bracing himself on a fellow officer's shoulder, used a 60-power telescope through which he saw, on the ground in front of the lean-to, five one-gallon tin cans with six inch tall

marijuana plants growing in them.

After viewing the marijuana, Officer Segundo obtained a warrant the sufficiency of which the appellant does not challenge. Appellant argues on appeal that the police officer's visual observation of the marijuana growing in his backyard obtained only by climbing the neighbor's fence and using a telescope was an unreasonable search and seizure subject to the warrant requirement of the Fourth Amendment of the United States Constitution and Article I, Section 5 of the Constitution of the State of Hawaii.

Application of the Fourth Amendment to visual surveillance is an unsettled area in the law. The United States Supreme Court has not yet applied the "reasonable expectation of privacy" standard enunciated in *Katz v. United States,* 389 U.S. 347 (1967), which dealt with electronic aural surveillance, to the area of visual surveillance, and none of the cases have indicated that visual surveillance would be excepted from the warrant requirement. As in the area of aural surveillance, the same factors are present in visual surveillance. That is, the information obtained is intangible and the observation may be conducted without a trespass. Thus, it would seem logical to extend the *Katz* reasonable expectation of privacy test to visual observation. Indeed, this court has stated that whether particular governmental conduct is a search and seizure is determined by asking whether the defendant had exhibited a reasonable expectation of privacy which was unreasonably invaded. *State v. Stachler,* 58 Haw. 412, 416, 570 P.2d 1323, 1326 (1977).

In attempting to develop criteria to determine under what circumstances the expectation of privacy is reasonable, we have considered the nature of the place involved, the precautions taken by the defendant to insure his privacy and the position of the government officer. *See State v. Kaaheena,* 59 Haw. 23, 575 P.2d 462 (1978); *State v. Boynton,* 58 Haw. 530, 574 P.2d 1330 (1978); *State v. Stachler,* 58 Haw. 412, 570 P.2d 1323 (1977); *State v. Rocker,* 52 Haw. 336, 475 P.2d 684 (1970).

Traditionally, the courts have spoken in terms of constitutionally protected places because of the trespass formerly necessary for the Fourth Amendment to apply. While it is true

that *Katz* rejected the slavish adherence to the trespass requirement, the "reasonable expectation of privacy" test requires reference to a place. 389 U.S. at 361 (concurring opinion of Justice Harlan). Fourth Amendment protection extends not only to one's home but also to one's "curtilage." Curtilage is usually defined as a small piece of land, not necessarily enclosed, around a dwelling house and generally includes buildings used for domestic purposes in the conduct of family affairs. *United States v. Wolfe,* 375 F. Supp. 949, 958 (E.D.Pa. 1974); *State v. Hanson,* 113 N.H. 689, 691, 313 A.2d 730, 732 (1973). Thus, one's back yard may be part of one's curtilage which may be a constitutionally protected area. In light of the "reasonable expectation of privacy" test laid down in *Katz,* a mechanical application of the curtilage doctrine will not suffice. As the court said in *People v. Sneed,* 32 Cal.App.3d 535, 541, 108 Cal.Rptr. 146, 150 (1973):

> Certainly it cannot be said that one who has a backyard concealed from the view of the public roadway has shown in all events a reasonable expectation of privacy for that area, no matter what other facts and circumstances may exist. *   *   *   [A] number of factors must be considered among which are the location of the premises, that is, whether in an urban or isolated area, existence or nonexistence and height of natural or artificial structures adjacent to the premises, the height and sight proof character of the fencing, the location of public or common private walkways adjacent to the premises, the type and character of invasion by the governmental authority, and other unforseeable factors which will arise on a case by case basis.

In its brief the State argues that the appellant had no reasonable expectation of privacy because "[n]o privacy fence had been erected, no screens placed up." The existence or nonexistence of a fence or screen is not, by itself, controlling. The issue is whether the defendant sufficiently demonstrated an expectation of privacy from a particular point of surveillance. In *State v. Kaaheena, supra,* we held that the defendant, by drawing the drapes, exhibited a reasonable expectation of privacy and that the existence of a

one-inch aperture did not negate that expectation so that the police officer's conduct in placing a crate on a bench below the window violated the reasonable expectation of privacy. In *State v. Boynton, supra,* we held that the defendant, by erecting a six and one-half feet lapped fence which "effectively prevented peeking" exhibited a reasonable expectation of privacy from a person positioned in his neighbor's yard so that the government agent's conduct in climbing the fence violated his reasonable expectation of privacy. In the instant case, the growth of California grass in appellant's backyard created a natural barrier behind which he could reasonably expect privacy in his own backyard from his neighbor's gaze. *See People v. Fly,* 34 Cal.App.3d 665, 110 Cal. Rptr. 158 (1973); *State v. Fearn,* 345 So.2d 468 (La. 1977).

Another factor to be considered in determining whether there was a violation of a reasonable expectation of privacy is the position of the law enforcement officer. In this case, Officer Segundo was positioned in the appellant's neighbor's yard with the neighbor's permission. Many cases have held that observations by a police officer positioned on the neighbor's property is not a "search and seizure" because the police officer is in a place where he had the "right" to be. However, this approach in which the officer's position is determinative of the issue will resurrect the former emphasis on property law concepts. These cases, moreover, are distinguishable. Virtually all of the cases involved observations by police officers which were facilitated by the defendant's failure to take sufficient steps to protect his privacy. *People v. Superior Court for County of L.A.,* 37 Cal.App.3d 869, 112 Cal.Rptr. 764 (1974) (observations by police officer looking over a five feet high fence disclosed no more than what the neighbor could see); *Dillon v. Superior Court of Santa Clara County,* 7 Cal.3d 305, 497 P.2d 505, 102 Cal.Rptr. 161 (1972) (observation of three and one-half to four feet high marijuana plants by officer positioned in upstairs bedroom window of neighbor revealed what neighbor could plainly see); *Hart v. Superior Court, County of San Mateo,* 21 Cal.App.3d 496, 98 Cal.Rptr. 565 (1971) (5-6' marijuana plants plainly visible to neighbor and officer through ½" crack separating wood

plank fence); *State v. Pontier*, 95 Idaho 707, 518 P.2d 969 (1974) (observation of marijuana in defendant's back yard enclosed only by waist high fence and intermittent vegetation); *George v. State*, 509 S.W.2d 347 (Tex.Crim.App. 1974) observation of defendant's backyard through cracks and knotholes in eight feet high fence by officer positioned in vacant lot). As we have already stated, the appellant herein demonstrated a reasonable expectation of privacy because the police officer testified that the California grass was thick enough to prevent him from seeing the marijuana except by climbing the fence.

The State argues that the appellant could not have had a reasonable expectation of privacy because he had placed the marijuana plants "in his backyard open to view from the neighbor's property to anyone including curious neighbors who desired to look over the California grass." There is no evidence on the record to show that the neighbor could see or could have seen the marijuana plants in Kender's backyard.

Related to the question of the officer's position is the defendant's reasonable expectation from a particular point of observation. In other words, while a defendant may have waived a reasonable expectation of privacy as to certain persons, he has not necessarily waived that right as against other sources. Generally, the courts have not considered whether a person had a reasonable expectation of privacy from a particular place of observation. *But see People v. Triggs*, 8 Cal.3d 895, 506 P.2d 232, 106 Cal.Rptr. 408 (1973); *Kroehler v. Scott*, 391 F.Supp. 1114 (E.D. Pa. 1975).[1] In *State v. Stachler, supra*, we held that the defendant who grew marijuana in his backyard did not have any reasonable expectation of privacy from an aerial observation because that would have been inconsistent with the common habits of agriculturists. However, in *State v. Boynton, supra*, the defendant also grew marijuana in his backyard but there we held that he had a reasonable expectation of privacy against observations from the neigh-

---

[1] These cases involve observations of activities in public bathroom stalls which could have been seen by members of the public; nevertheless, the courts, perhaps recognizing the sanctity of private bodily functions condemned the clandestine "exploratory" surveillance of "guilty" and innocent alike.

bor's property because he had taken sufficient precautions against that particular intrusion. In the instant case, the appellant by allowing a thick brush of California grass to grow which effectively prevented observation into that part of the backyard where the marijuana plants were located, exhibited a reasonable expectation of privacy against observations by persons positioned in his neighbor's property and the reasonableness of that expectation is only reconfirmed by the intrusiveness of the police officer's conduct. *State v. Kaaheena, supra; State v. Boynton, supra.*

It is well-established in this jurisdiction that warrantless searches are unreasonable unless they fall within one of the specifically established and well delineated exceptions. *United States v. Robinson,* 414 U.S. 218 (1973); *Chimel v. California,* 395 U.S. 752 (1969); *Bumper v. North Carolina,* 391 U.S. 543 (1968); *Warden v. Hayden,* 387 U.S. 294 (1967); *Carrol v. United States,* 267 U.S. 132 (1925); *State v. Patterson,* 58 Haw. 462, 571 P.2d 745 (1977); *State v. Barnes,* 58 Haw. 333, 568 P.2d 1207 (1977). The information used by Officer Segundo in obtaining a warrant in the instant case did not fall into any of the above exceptions. *State v. Boynton, supra.* The motion to suppress should have been granted.

Reversed.

*William L. Kohne* for Defendant-Appellant.

*Boyd P. Mossman,* Assistant Prosecuting Attorney, for Plaintiff-Appellee.

*Edward R. Lebb (Ing, Lebb and Yano* of counsel) for defendant-appellant, for the petition.