35 P.3d 764

**STATE of Hawaii, Plaintiff–Appellee,**

v.

**Maile K. SANFORD, Defendant–Appellant.**

No. 23770.

Intermediate Court of Appeals of Hawai'i.

Oct. 30, 2001.

Certiorari Denied Dec. 10, 2001.

Stuart N. Fujioka, (Nishioka & Fujioka), on the briefs, for defendant-appellant.

Caroline M. Mee, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

WATANABE, Acting C.J., LIM, and FOLEY, JJ.

Opinion of the Court by LIM, J.

Defendant–Appellant Maile K. Sanford (Sanford) appeals the September 20, 2000 judgment of the circuit court of the first circuit,[1] that convicted her of (count 1) promoting a dangerous drug in the third degree, in violation of Hawaii Revised Statutes (HRS) § 712–1243 (1993 & Supp.2000);[2] (count 2) unlawful use of drug paraphernalia, in violation of HRS § 329–43.5(a) (1993);[3] and (count 3) shoplifting, in violation of HRS §§ 708–833.5(3) (1993) and 708–830(8)(a) (1993); and sentenced her to a five-year indeterminate term of imprisonment in each of counts 1 and 2 with a mandatory minimum term of imprisonment in count 1 of four months, and to thirty days in jail in count 3, all terms to run concurrently.

Sanford also appeals the court's July 28, 2000 findings of fact, conclusions of law and order denying her motion to suppress evidence; and the court's July 28, 2000 findings of fact, conclusions of law and order denying her motion to dismiss count 1.[4]

Sanford contends on appeal (1) that the court erred in denying her motion to suppress evidence because the Sears floorwalker, who detained her for shoplifting, searched her bag and found drug contraband, was subject to and violated the prohibitions against unreasonable searches and seizures contained in the Fourth Amendment to the United States Constitution[5] and article I, section 7 of the Hawaii Constitution;[6] (2)

---

1. The Honorable Gail C. Nakatani presided over the jury trial and sentencing.

2. Hawaii Revised Statutes (HRS) § 712–1243 (1993 & Supp.2000) provides:

 **Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.
 (2) Promoting a dangerous drug in the third degree is a class C felony.
 (3) Notwithstanding any law to the contrary, if the commission of the offense of promoting a dangerous drug in the third degree under this section involved the possession or distribution of methamphetamine, the person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment, the length of which shall be not less than thirty days and not greater than two-and-a-half years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory period of imprisonment.

3. HRS § 329–43.5(a) (1993) provides:

 **Prohibited acts related to drug paraphernalia. (a)** It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640. Methamphetamine is a controlled substance. HRS § 329–16(e)(2) (Supp.2000).

4. The Honorable Michael A. Town heard the motion to suppress evidence and the motion to dismiss count 1.

5. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

6. Article I, section 7 of the Hawaii Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted."

that the court erred in denying her motion to dismiss count 1 of the complaint because her possession of minute amounts of methamphetamine was *de minimis* under HRS § 702–236(1)(b) (1993);[7] and (3) that the court erred in failing to require the jury to answer special interrogatories identifying which specific items of drug contraband Sanford possessed, thus violating her constitutional right to a unanimous jury verdict under *State v. Arceo*, 84 Hawai'i 1, 32–33, 928 P.2d 843, 874–75 (1996). We disagree with Sanford's contentions and affirm the judgment and the two July 28, 2000 orders.

## I. BACKGROUND.

The complaint was filed on May 10, 2000. On June 22, 2000, Sanford filed a motion to dismiss count 1 of the complaint, arguing that possession of 0.004 grams of a substance containing methamphetamine found in a Ziploc bag and 0.005 grams of a residue containing methamphetamine found in a glass pipe was *de minimis* under HRS § 702–236(1)(b). In her memorandum in support of the motion, Sanford requested judicial notice of certain matters:

> On this subject, [Sanford] is informed and believes that this division of the First Circuit takes judicial notice of prior testimony by expert chemists who have testified on behalf of the defendants in other cases. [Sanford] *likewise respectfully requests that this honorable court judicially notice the testimony previously rendered by Dr. George Read* [ (Dr. Read) ], *on pharmacological effects of methamphetamine, along with any other previous expert testimony which would assist the Court in deciding this motion.*

(Italics in the original.)

Sanford attached to her motion two sets of police evidence reports and corresponding crime lab analysis reports. The first set concerned two "plastic ziplock bags, pink red color, ... both containing white residue[,]" one "clear plastic ziplock bag, ... containing white crystalline substance weighing *0.004 grams* [,]" and one "clear plastic ziplock bag, ... containing white residue." (Underlining in the original.) The weighed substance was examined and analyzed, and was found to contain methamphetamine. The second set concerned "[o]ne glass pipe, bulbous shaped end, approximately 3½″ in length, containing whitish substance weighing *0.005 grams*." (Underlining in the original.) The whitish substance was examined and analyzed and was found to contain methamphetamine. At the July 14, 2000 hearing on the motion to dismiss, the parties stipulated to admission of the reports. Further, the prosecutor requested that

> the Court ... take judicial notice of Dr. Kevin Ho's [ (Dr. Ho) ] testimony in previous de minimis cases. I believe he testified in at least two cases that were before this Court. I can't remember the names of the defendants or the criminal numbers.
>
> THE COURT: Okay. I've gotta check with my staff. We're on our about 35th or 40th case here. Let me look real quickly. Harry Oneha, 99–0742, and Darrell Martin, 99–1717.
>
> [PROSECUTOR]: And then the State would also have no objection to the Court taking judicial notice of Dr. [Read's] testimony in the same cases.
>
> THE COURT: Counsel, any objection?
>
> [DEFENSE COUNSEL]: No.

The noticed testimony is not included in the record on appeal. The court apparently relied upon that testimony in orally denying Sanford's motion to dismiss:

> (b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
> (c) Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.
> (2) The court shall not dismiss a prosecution under subsection (1)(c) of this section without filing a written statement of its reasons.

7. HRS § 702–236 (1993) provides:
 **De minimis infractions.** (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:
 (a) Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the offense; or

[Sanford], in this case on the motion to dismiss on the drug count, de minimis, I will respectfully deny that. This Court has found that 5 milligrams or greater of crystal methamphetamine can cause the heart rate to go up, the blood pressure to increase. And that taken in tandem with the 4 milligram bag, I'm going to deny both of them, both for that reason and the extraneous circumstances surrounding it.

Also on June 22, 2000, Sanford filed a motion to suppress evidence—the "ziploc bags containing drug residue" and the "glass pipe and residue"—arguing that the Sears floorwalker who discovered the items was subject to and violated the constitutional prohibitions against unreasonable searches and seizures.

■ Evidence at trial and at the July 14, 2000 hearing on Sanford's motion revealed the following.[8]

Robert Molioo (Molioo) testified that on May 1, 2000, while employed as a plainclothes Sears Roebuck and Company "asset protection agent" at the Ala Moana Center store, he saw Sanford conceal a pair of binoculars in a Nordstrom shopping bag and walk out of the store past open cash registers without paying for the binoculars. After detaining Sanford and taking her to the Sears security office, Molioo searched the Nordstrom bag and found the binoculars under some of Sanford's clothing. He also searched a bag or backpack she was wearing, "[f]or other merchandise and for my safety and for identification[,]" and found in a black leather pouch several little Ziploc bags, one of which contained a white crystalline substance, along with a glass pipe with white-and-black residue in its bulbous end. He then called the police. Molioo did not see Sanford enter the store and could not say

how long she had been in the store before he first saw her.

When asked what the white crystalline substance looked like, Molioo responded, "Crack." [9] When asked what the glass pipe was, he replied, "It's a crack pipe." Officer Douglas Kamai, the police officer who recovered the evidence from Molioo, testified at trial that the glass pipe is "a pipe that through my training is commonly used for the use of smoking crystal methamphetamine."

Molioo testified that no police officer accompanied him on his rounds that day, that he did not know whether any police officers were in the area when the shoplifting occurred, and that he did not receive any "reward, money, payment of any kind from the police department or any other law enforcement agency" as a result of the incident. He also stated that he was not and had never been a police officer, had never applied for a job as a police officer, and had never been in the military. This was his first job "in asset protection[.]" He had been trained "on-the-job" by the "Sears supervisor[.]" No law enforcement agency had any role in his training. He did not know whether the Sears supervisor who had trained him had police experience. He was not licensed or otherwise certificated by the State as an asset protection agent.

Molioo further testified that in cases such as this, he has no discretion to simply issue a trespass warning and let the perpetrator go, or to release the perpetrator after allowing him or her to pay for the shoplifted item. He must call the police.

Honolulu Police Department criminalist Shirley Brown (Brown) testified at trial that she analyzed the crystalline substance in one of the small Ziploc bags and found it contained methamphetamine; specifically, meth-

---

**8.** [W]hen the defendant's pretrial motion to suppress is denied and the evidence is subsequently introduced at trial, the defendant's appeal of the denial of the motion to suppress is actually an appeal of the introduction of the evidence at trial. Consequently, when deciding an appeal of the pretrial denial of the defendant's motion to suppress, the appellate court considers both the record of the hearing on the motion to suppress and the record of the trial. *State v. Nakachi*, 7

Haw.App. 28, 33 n. 7, 742 P.2d 388, 392 n. 7 (1987); *State v. Uddipa*, 3 Haw.App. 415, 416–17, 651 P.2d 507, 509 (1982); *State v. Crowder*, 1 Haw.App. 60, 66–67, 613 P.2d 909, 914 (1980).

*State v. Kong*, 77 Hawai'i 264, 266, 883 P.2d 686, 688 (App.1994).

**9.** Apparently, the asset protection agent was referring to crack cocaine.

amphetamine hydrochloride. Brown commented that "it's usually people smoke that form." The weight of the crystalline substance was 0.004 grams. Brown also analyzed the white residue coating the inside of the glass pipe. She found that it, too, contained methamphetamine. The weight of the white residue from the glass pipe was 0.005 grams.

At the July 14, 2000 hearing on the motion to suppress,[10] the court orally denied the motion to suppress, finding that the Sears floorwalker was not a State agent.

The jury trial was held on July 24 and 25, 2000. Before the trial started, Sanford had requested a jury unanimity instruction:

As to Count I of the Complaint, Promoting a Dangerous Drug in the Third Degree, before you can find the defendant guilty, you must unanimously agree, beyond a reasonable doubt, upon a specific act of promotion as to a certain item of dangerous drug. *State v. Arceo*, 84 Hawai'i 1[, 928 P.2d 843] (1996).

With the agreement of the parties, the court modified Sanford's proposed instruction to read as follows:

As to Count I of the Complaint, Promoting a Dangerous Drug in the Third Degree, before you can find the defendant guilty, you must unanimously agree, beyond a reasonable doubt, upon a specific item of dangerous drug which establishes the charge.

As to Count II of the Complaint, Unlawful Use of Drug Paraphernalia, before you can find the defendant guilty, you must unanimously agree, beyond a reasonable doubt, upon a specific item of paraphernalia which establishes the charge.

However, immediately before the court read the instructions to the jury, Sanford requested that the jury verdict forms for counts 1 and 2 include a special interrogatory:

[DEFENSE COUNSEL:] On the guilty verdict form as to promoting [a] dangerous [drug in the] third [degree] I would like it to read something like we the

jury unanimously find beyond a reasonable doubt that on May 1, 2000, in the City and County of Honolulu, State of Hawaii, [Sanford] knowingly possessed the following items of dangerous drug. And then a space for check marks as to ... contents of Exhibit 1 [the glass pipe] or Exhibit 2 [the Ziploc bag containing the crystalline substance].

 . . . .

The Count II instruction, we the jury find unanimously beyond a reasonable doubt that on May 1, 2000 [Sanford] in the City and County of Honolulu, State of Hawaii unlawfully used the following item of drug paraphernalia. And blanks for Exhibit 1 and a blank for items other than Exhibit 1 which are depicted in photograph Exhibit 8 [a photograph of the contents of Sanford's bag showing items in addition to the glass pipe and the Ziploc bag containing the crystalline substance, such as other Ziploc bags, the black leather pouch, broken pieces of straw and "a little Q-tip thing"].

The State objected, and the court refused Sanford's request for special interrogatories: "I don't think that a special verdict form is required by case law and that the instruction as requested by [Sanford] concerning unanimity is being given, and I think that that is an adequate instruction."

During her closing argument, Sanford admitted she was guilty of the shoplifting charge in count 3. The jury returned a verdict of guilty as charged on all three counts.

## II. DISCUSSION.

*A. The Motion to Suppress.*

On appeal, Sanford first contends that the court erred in not granting her motion to suppress the Ziploc bags and the glass pipe.

 "We review the circuit court's ruling on a motion to suppress *de novo* to determine whether the ruling was 'right' or 'wrong.' " *State v. Kauhi,* 86 Hawai'i 195, 197, 948 P.2d 1036, 1038 (1997) (citation omit-

---

10. Both the motion to dismiss count 1 and the motion to suppress evidence were heard at the July 14, 2000 hearing.

ted). The circuit court's conclusions of law underlying its ruling on a motion to suppress are also reviewed *de novo* under the right/ wrong standard. "Under the right/wrong standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Meyer,* 78 Hawai'i 308, 311, 893 P.2d 159, 162 (1995) (internal quotation marks and citations omitted). However,

> [a] court's FOF [findings of fact] are reviewed under the clearly erroneous standard, *Dan v. State,* 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994), and "will not be set aside on appeal unless they are determined to be clearly erroneous." *State v. Joyner,* 66 Haw. 543, 545, 669 P.2d 152, 153 (1983) (citations omitted).

*Id.* at 311, 893 P.2d at 162. A finding of fact is clearly erroneous when

> (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.

*State v. Okumura,* 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (internal quotation marks and citation omitted).

Sanford's basic argument in this respect is that asset protection agents can fulfill private employer interests by, for example, being uniformed and thus a visible deterrent to shoplifting, or for further example, by simply demanding the return of stolen merchandise and ejecting and barring the malefactor from the store. Sanford goes on to argue that asset protection agents should be considered *de facto* law enforcement agents, and therefore State agents subject to the constitutional prohibitions against unreasonable searches and seizures, when they go beyond what is necessary to vindicate private employer interests by detaining and searching shoplifters, and turning them over to the police for criminal prosecution. Hence, Sanford urges us to adopt a sort of "public function test" for State action. In aid of this exhortation, Sanford cites a California case, *People v. Zelinski,* 24 Cal.3d 357, 155 Cal.Rptr. 575, 594 P.2d 1000 (1979); a concurrence in a Michigan case, *People v. Holloway,* 82 Mich.App.

629, 267 N.W.2d 454 (1978) (Kaufman, J., concurring in result); and two law review articles: Harvey L. Ziff, *Seizures by Private Parties: Exclusion in Criminal Cases,* 19 Stan. L.Rev. 608 (1967), and Steven Euller, *Private Security and the Exclusionary Rule,* 15 Harv. Civil Rights–Civil Liberties L.Rev. 649 (1980).

We need not sojourn to such exotic sources for guidance in this case, because controlling authority is readily available here at home. In *State v. Boynton,* 58 Haw. 530, 574 P.2d 1330 (1978), the Hawai'i Supreme Court accepted the basic premise that "the fourth amendment protection against unreasonable searches and seizures applies to action attributable to the government." *Id.* at 534, 574 P.2d at 1333. Accordingly, "searches performed by private persons ... are not subject to the fourth amendment's proscription." *Id.* (citing *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921)). However, if the private person conducting the search is at the time and in effect an instrument or agent of the government, the search is not a private search immune from constitutional scrutiny, *id.* at 536, 574 P.2d at 1334, and if the search derogates constitutional protections against unreasonable searches and seizures, evidence thereby discovered must be suppressed. *Id.* at 539, 574 P.2d at 1336. The constitutional protections apply

> only if the private party "in light of all circumstances of the case must be regarded as having acted as an 'instrument' or agent 'of the state." *Coolidge v. New Hampshire, supra,* 403 U.S. at 487, 91 S.Ct. at 2049. Application of this definition will frequently require a careful factual analysis.

*Id.* at 536, 574 P.2d at 1334 (citations and internal block quote format omitted). In *State v. Kahoonei,* 83 Hawai'i 124, 925 P.2d 294 (1996), the supreme court confirmed that

> when determining whether a private individual is a government agent under article I, section 7 or the fourth amendment, there is no bright-line rule of application. Instead, we must examine the totality of the circumstances to determine whether the governmental involvement is signifi-

cant or extensive enough to objectively render an otherwise private individual a mere arm, tool, or instrumentality of the state. In so doing, we focus on the actions of the government, because ... the subjective motivation of a private individual is irrelevant.

*Id.* at 130, 925 P.2d at 300.

 The totality of the circumstances in this case clearly show that Molioo conducted a purely private search of Sanford immune from Fourth Amendment and article I, section 7 scrutiny. Molioo was employed at the time by a private business. He was not licensed or certificated by the State as an asset protection agent. He had not previously worked in law enforcement. No law enforcement agency had any role in training him for his job. The police were not involved in any way in the search and seizure until Molioo called them. And the police did not in any way direct or encourage Molioo to search, or reward him for the seizure.

This is far from the kind of "governmental involvement ... significant or extensive enough to objectively render an otherwise private individual a mere arm, tool, or instrumentality of the state." *Kahoonei,* 83 Hawai'i at 130, 925 P.2d at 300. We are not exaggerating when we say we can see no governmental involvement at all in the search and seizure. Hence, the court did not err in denying Sanford's motion to suppress evidence on the grounds that the search was a private search.

### B. The Motion to Dismiss Count 1.

 Sanford next contends that the court erred in denying her motion to dismiss count 1, because her possession of exiguous amounts of methamphetamine was *de minimis* under HRS § 702–236. That statute provides:

**De minimis infractions.** (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:

(a) Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the offense; or

(b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(c) Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.

(2) The court shall not dismiss a prosecution under subsection (1)(c) of this section without filing a written statement of its reasons.

A trial court's determination that a criminal defendant's conduct is or is not *de minimis* pursuant to HRS § 702–236 is reviewed under the following standards:

Prior to resolving whether an offense is *de minimis,* pursuant to HRS § 702–236, ... the trial court must undertake factual determinations. *See State v. Park,* 55 Haw. 610, 616–17, 525 P.2d 586, 591 (1974) (noting that, "before the code's § 236 can be properly applied in a criminal case, all of the relevant facts bearing on the defendant's conduct and the nature of the attendant circumstances regarding the commission of the offense should be shown to the judge" so that the judge may "consider all of the facts on this issue").

[Findings of fact] are reviewed under the clearly erroneous standard. *Dan v. State,* 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994). "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Id.*

*State v. Kane,* 87 Hawai'i 71, 74, 951 P.2d 934, 937 (1998) (brackets in original).

Once a court has considered the relevant facts, it must decide whether the alleged infraction is *de minimis.*

The dismissal of a prosecution for a *de minimis* infraction pursuant to HRS § 702–236 ... is not a defense. The

authority to dismiss a prosecution under HRS § 702–236 rests in the sound discretion of the trial court. Therefore, a court's decision under HRS § 702–236 is reviewed for abuse of discretion. We will reverse the trial court only if the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*State v. Ornellas,* 79 Hawai'i 418, 420, 903 P.2d 723, 725 (App.1995); *see also State v. Reed,* 77 Hawai'i 72, 85, 881 P.2d 1218, 1231 (1994); supplemental commentary on HRS § 702–236 (noting that the legislature intended "to make the court's power to dismiss a prosecution discretionary upon the finding that the conduct constituted a de minimis infraction") (quoting Sen. Conf. Comm. Rep. No. 2, in 1972 Senate Journal, at 741). This decision is akin to those made regarding the admissibility of certain types of evidence, which require "judgment calls" on the part of the trial judge. *See, e.g., State v. Cabrera,* 90 Hawai'i 359, 366, 978 P.2d 797, 804 (1999) (noting that Hawai'i Rules of Evidence (HRE) Rules 403 and 404 are reviewed pursuant to the abuse of discretion standard).

*State v. Viernes,* 92 Hawai'i 130, 133, 988 P.2d 195, 198 (1999).

 Sanford asserts, in essence, that her conduct "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction[.]" HRS § 702–236(1)(b). This is so, she argues, because the punishment for promoting a dangerous drug in the third degree, a mandatory five-year prison term, HRS § 712–1243(3), "does not fit the crime" of possessing 0.004 grams of a substance containing methamphetamine (in the Ziploc bag) and 0.005 grams of a residue containing methamphetamine (in the glass pipe). Opening Brief at 28. Sanford also argues that her count 1 conviction was *de minimis* because "the harm or evil sought to be prevented by the law defining the of-

fense[,]" HRS § 702–236(1)(b), is a violent crime, and hers was not a violent crime. We disagree.

In *Viernes,* Dr. Read opined, at a hearing in the circuit court on a HRS § 702–236(1)(b) motion to dismiss, that 0.001 grams of a substance containing methamphetamine (concentration unknown) could have no "physiological effect on a human body[,]" and no "pharmacological action that I'm aware of." He also opined, that amount is not a "saleable amount[.]" *Viernes,* 92 Hawai'i at 132, 988 P.2d at 197. Thereupon, the Hawai'i Supreme Court affirmed the circuit court's grant of the motion, holding that

> [i]nasmuch as the .001 grams of methamphetamine was infinitesimal and was neither useable nor saleable, it could not engender any abuse or social harm. As such, Viernes's possession of the .001 grams of methamphetamine did not threaten the harm sought to be prevented by HRS § 712–1243. Accordingly, the circuit court did not abuse its discretion in determining that .001 grams of methamphetamine was *de minimis* pursuant to HRS § 702–236.

*Id.* at 134–35, 988 P.2d at 199–200 (footnote omitted). At the hearing, Dr. Read had also opined that it would take a 0.05 gram dose [11] for an adult without drug tolerance to "be conscious of a substantial effect[.]" *Id.* at 131, 988 P.2d at 196.

In the memorandum in support of her motion to dismiss count 1, Sanford requested that the court take judicial notice of testimony by Dr. Read "previously rendered ... on pharmacological effects of methamphetamine, along with any other previous expert testimony which would assist the Court in deciding this motion." (Italics omitted.) At the hearing on the motion, the parties agreed that the court could take judicial notice of Dr. Ho's testimony in two previous "de minimis cases" before the same court, along with Dr. Read's testimony in the same cases. The court orally denied Sanford's motion and found that "5 milligrams or greater of crystal methamphetamine can cause the heart rate to go up, the blood pressure to increase.

---

**11.** It is unclear and not expressed in the opinion whether the doctor was referring to 0.05 grams of methamphetamine or 0.05 grams of a substance containing a known concentration of methamphetamine. *State v. Viernes,* 92 Hawai'i 130, 131, 988 P.2d 195, 196 (1999).

And that taken in tandem with the 4 milligram bag, I'm going to deny [the motion], both for that reason and the extraneous circumstances surrounding it."

The written order issuing out of the hearing contained, as required, findings of fact, *id.* at 133, 988 P.2d at 198, including the following:

12. On the issue of the physical and pharmacological effects of methamphetamine, by agreement of the parties, this court takes judicial notice of existence and content of all relevant testimony of [Dr. Read], as well as [Dr. Ho], as given before this court in other motion hearings alleging, like here, possession of de minimis amounts of methamphetamine.

13. Based on the previous expert testimony given before this court by [Dr. Read] and [Dr. Ho], the combined 0.009 grams of methamphetamine contained in the plastic bag and the pipe [Sanford] was found with exceeds the amount necessary to produce noticeable effects in the human body and is a "useable" amount.

Sanford does not challenge these findings of fact in her appeal. *See Leibert v. Finance Factors, Ltd.,* 71 Haw. 285, 288, 788 P.2d 833, 835 (1990) (findings of fact not specified as error on appeal pursuant to Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(C) are treated as unchallenged on appeal); HRAP Rule 28(b)(4)(C) (2000); *cf. Amfac, Inc. v. Waikīkī Beachcomber Investment Co.,* 74 Haw. 85, 125, 839 P.2d 10, 31 (1992) (conclusion of law not challenged on appeal is treated as binding on the appeals court). Given the court's findings, we cannot say, as was said in *Viernes,* that "[i]nasmuch as .001 grams of methamphetamine was infinitesimal and was neither useable nor saleable, it could not engender any abuse or social harm[,]" and hence, "did not threaten the harm sought to be prevented by HRS § 712–1243." *Viernes,* 92 Hawaiʻi at 134–35, 988 P.2d at 199–200 (footnote omitted).

Moreover, viewing, as we must, "all of the relevant facts bearing on the defendant's conduct and the nature of the attendant circumstances regarding the commission of the offense[,]" *Park,* 55 Haw. at 616, 525 P.2d at 591 (citation omitted); *see also Viernes,* 92 Hawaiʻi at 133, 988 P.2d at 198, including the juxtaposition of drug repositories, smoking device and smoked residue, and especially the possession of such depleted drug contraband by one engaged in shoplifting, we cannot conclude that Sanford's conduct "did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction[,]" HRS § 702–236(1)(b), or agree with her that the punishment "does not fit the crime" as a matter of law.

■ As for Sanford's contention that her conduct, because it was nonviolent, "did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense[,]" *id.,* we consult *Viernes,* and discover that "[t]he legislature increased the penalties attendant to the possession or distribution of methamphetamines 'to counter increased *property* and violent crimes.' 1996 Haw. Sess. L. Act 308, at 970." *Viernes,* 92 Hawaiʻi at 134, 988 P.2d at 199 (emphasis added). It appears, instead, that Sanford's conduct is precisely the harm or evil that the legislature sought to prevent in HRS § 712–1243.

We conclude that the court did not abuse its discretion in denying Sanford's motion to dismiss count 1.

## C. The Requested Special Interrogatories.

Sanford's final contention on appeal is that the court erred in failing to require the jury to answer special interrogatories identifying which specific items of drug contraband she possessed.

■ Because special interrogatories are another way in which trial courts instruct juries as to their deliberations and decisions, we review a trial court's special interrogatories, or the lack thereof, as we would its jury instructions, or the lack thereof:

When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.

Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.

Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.

If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

*Arceo*, 84 Hawai'i at 11–12, 928 P.2d at 853–54 (citations, brackets, and internal quotation marks and block quote formats omitted).

This issue arises out of the Hawai'i Supreme Court's holding in *Arceo*, that

when separate and distinct culpable acts are subsumed within a single count charging a sexual assault—any one of which could support a conviction thereunder—and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, *i.e.*, an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

*Id.* at 32–33, 928 P.2d at 874–75 (footnote omitted).

Assuming *arguendo* that *Arceo* applies in this case, *but see State v. Rapoza*, 95 Hawai'i 321, 329–30, 22 P.3d 968, 976–77 (2001) ("a specific unanimity instruction is not required if the conduct element of an offense is proved by the prosecution to have been a series of acts constituting a continu-ous course of conduct and the offense is statutorily defined in such a manner as to not preclude it from being a 'continuous offense' "), we observe that, because the State did not elect the specific acts upon which it was relying to establish the conduct elements of counts 1 and 2, the court did give the jury a specific unanimity instruction, as required in that eventuality by *Arceo*.

Sanford concedes that the court gave the jury an appropriate unanimity instruction. She argues however, that "[w]hile the instruction in this case is essentially correct, by itself it did not adequately preserve the defendant's right to a unanimous verdict." Opening Brief at 30. The defect, in Sanford's view, is that "there is no record of any unanimous finding of guilt." Opening Brief at 29. In other words, "[w]ithout special interrogatories, it is impossible to verify whether the jury complied with the unanimity instruction." Opening Brief at 16.

This is no defect. We presume the jury followed the court's instructions. *State v. Melear*, 63 Haw. 488, 497, 630 P.2d 619, 626 (1981). Therefore, if the unanimity instruction was correct, we presume there was no error. Sanford does not purport to prove otherwise. And we see no reason for the court to have instituted fail-safe measures:

This court has uniformly held that where a given proposition of law is requested to be given in an instruction, the instruction may properly be refused where the same proposition is adequately covered in another instruction that is given. This is true even where the refused instruction is a correct statement of the law.

*State v. Stuart*, 51 Haw. 656, 660–61, 466 P.2d 444, 447 (1970) (citations omitted).

We conclude that the court did not err in refusing to pose to the jury the special interrogatories proffered by Sanford.

## III. DISPOSITION.

We therefore affirm the circuit court's September 20, 2000 judgment, along with its findings of fact, conclusions of law and order denying motion to suppress evidence and its findings of fact, conclusions of law and order

denying motion to dismiss count I of the complaint, both entered on July 28, 2000.