117 P.3d 866

**In the Interest of DOE CHILDREN: John Doe, Born on September 6, 1992, John Doe, Born on December 16, 1997, John Doe, Born on December 16, 1997, John Doe, Born on October 23, 2000, and John Doe, Born on January 31, 2002, Minors.**

**Nos. 26739, 26080.**

Intermediate Court of Appeals of Hawai'i.

July 18, 2005.

Certiorari Denied Aug. 25, 2005.

---

Herbert Y. Hamada, on the briefs, for Father–Appellant.

Jay K. Goss, Mary Anne Magnier, and Gay M. Tanaka, Deputy Attorneys General, State of Hawaii, on the briefs, for Petitioner–Appellee.

Francis T. O'Brien, on the briefs, for Intervenors–Appellees.

BURNS, C.J., LIM and NAKAMURA, JJ.

Opinion of the Court by BURNS, C.J.

This is a Hawaii Revised Statutes (HRS) Chapter 587 (1993 and Supp.2004) termination of parental rights case involving the mother (Mother) and father (Father) of the following five male children: First Son, born on September 6, 1992; Second Son, born on December 16, 1997; Third Son, born on December 16, 1997; Fourth Son, born on October 23, 2000; and Fifth Son, born on January 31, 2002.

Appeals no. 26080 and 26739 were consolidated for decision on June 1, 2005. Appeal no. 26080 pertains to the family court decision terminating Father's parental rights with respect to Second Son, Third Son, and Fourth Son. Appeal no. 26739 pertains to the family court decision terminating Father's parental rights with respect to First Son and Fifth Son. We affirm.

## BACKGROUND

The Findings of Fact and Conclusions of Law, entered by Judge Marilyn Carlsmith on November 5, 2003 (November 5, 2003 FsOF and CsOL), contain more than three hundred findings of fact. In relevant part, those findings state as follows:

10. Mother and Father have a history of substance abuse, domestic violence and inadequate parenting skills.

11. In January 2000 DHS [Department of Human Services, State of Hawai'i] confirmed threatened neglect of the three oldest ... children due to drug abuse.

12. In October 2000, DHS confirmed threat of abuse and neglect of [Fourth Son] by Mother when [Fourth Son] tested positive for crystal methamphetamine at birth.

13. Both parents signed a voluntary foster custody agreement.

14. Father completed services including anger management and drug treatment, the children were returned to him and the case was closed.

15. Mother only did parenting class and remained an untreated substance abuser.

. . . .

17. DHS filed a petition under Chapter 587, HRS, on February 7, 2002, and [sic] alleging threat of abuse and threatened neglect when Mother tested positive for methamphetamine and amphetamine at the birth of [Fifth Son] on January 31, 2002.

18. At a return date on February 11, 2002, Mother agreed to jurisdiction and foster custody. The court took jurisdiction as to mother and DHS was awarded foster

custody of the children. Father contested court involvement and the matter was set for an adjudication as to father on March 5, 2002.

. . . .

20. At a trial on March 5, 2002, the court took jurisdiction as to Father and again awarded DHS with foster custody over the children. . . .

. . . .

31. Parents were complying with the service plan but not fully cooperating with DHS or demonstrating positive changes in their behavior. Nevertheless, the goal remained reunification by March 2003.

. . . .

37. At the hearing on April 25, 2003 the court granted maternal aunt and uncle's Motion for Leave to Intervene.

## APPEAL NO. 26080

On May 22, 2003, DHS filed a Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan regarding Second Son, Third Son, and Fourth Son.

On July 30, 2003, after a trial, Judge Carlsmith entered an Order Awarding Permanent Custody that divested Mother and Father of their parental and custodial rights and duties with respect to Second Son, Third Son, and Fourth Son, awarded permanent custody to DHS, and ordered the May 15, 2003 Permanent Plan into effect. The goal of that permanent plan was adoption.

On August 18, 2003, Father filed a motion for reconsideration authorized by HRS § 571–54 (Supp.2004). On August 20, 2003, Mother filed a motion for reconsideration authorized by HRS § 571–54. On September 5, 2003, Judge Carlsmith entered an order denying both motions for reconsideration.

On September 9, 2003, Mother's notice of appeal was filed. On September 30, 2003, Father's notice of appeal was filed.

The November 5, 2003 FsOF, further state, in relevant part, as follows:

56. It was not what parents were doing that was the main problem but the inconsistent pattern of lying that amounted to a safety risk.

57. After three years of DHS intervention and a year of family court involvement, parents failed to demonstrate changed behavior and good judgment such that they are able to provide a safe home for [Second Son, Third Son and Fourth Son].

. . . .

87. Mother's greatest fear is losing Father.

. . . .

91. Although parents agreed that they would not live together when [M]other left her treatment program, Mother continued to spend most of her free time with Father.

. . . .

101. Mother has had continuous contact with Father including seeing Father and [First Son] after school and staying with Father on weekends.

102. Mother['s] regular contact with [F]ather put her at risk of relapse and shows poor judgment.

. . . .

115. Mother's domestic violence counselor expressed great surprise when told that Mother admitted under oath that Father had been the perpetrator of at least three incidents of physical violence.

. . . .

120. Mother was willing at trial to do or say anything in order to make Father look good so that he would get the children back.

. . . .

163. Father had a chaotic childhood that involved severe physical abuse by his father.

. . . .

169. Father has never resolved past childhood issues which affect parenting, resolve past childhood trauma, resolve personality dysfunction & understand how behavior and personality impact upon well being of the children as outlined in Father's psychological evaluation on April 27, 2000.

175. The result of Father's lack of insight and non-protectiveness was the in utero exposure of [Fifth Son] to amphetamines and crystal methamphetamines. Patterns seen in past behavior can predict future behavior.

. . . .

179. Although Father completed anger management, he failed to demonstrate those skills in his interactions with DHS.

. . . .

182. Father has not admitted the impropriety of swearing in the presence of children and instead attempts to rationalize his behavior by saying everyone swears and that he does not swear at the children.

183. Father rationalizes that his displays of anger in front of his children is just a part of life.

. . . .

188. Father completed a domestic violence class which he started around February 2002 and was currently in domestic violence counseling. Despite having completed domestic violence services once and being in treatment now, Father has serious power and control issues.

. . . .

203. Father's lack of candor with his domestic violence counselor shows lack of insight into his own domestic violence issues, non-comprehension of domestic violence issues in general, and is an attempt to portray himself in a positive light that has lead [sic] to misdiagnosis, ineffective delivery of services and limited the internalization of services.

. . . .

209. Father blames others, including Mother, for perceiving his behavior as angry, controlling or abusive.

. . . .

216. Father remains emotionally dependent on Mother.

. . . .

232. Both of Father's psychological evaluations, . . . , describe Father with anti-social features.

. . . .

235. Father failed to resolve his emotional dependency issues.

. . . .

237. Father has been driving without a valid driver's license which was suspended in 1998.

. . . .

249. Father leaves too much childcare to [First Son]. . . .

: . . .

252. Father's ongoing deceitfulness has affected his relationship with service providers to the point that it hinders his ability to internalize the lessons and limits his ability to change his behavior.

253. Father presently poses a risk of harm to the children because he is not able to meet their extremely high needs for stability and very skilled parenting, and he has not adequately addressed anger management and domestic violence issues which present a substantial likelihood of neglect or abuse of the child in the future.

. . . .

301. In light of the children's extremely high need for stability and other special needs, the seriousness of parents' problems, and the length of time the children have been in foster care, further delay in determining whether parents can overcome their problems sufficiently to become able to provide for the children's special needs is not in the children's best interest.

On December 19, 2003, the Hawai'i Supreme Court approved a Stipulation for Dismissal of Mother's Appeal with Prejudice.

On June 16, 2004, appeal no. 26080 was assigned to this court.

In his opening brief, filed on February 18, 2004, Father presents the following points on appeal:

1. The evidence is insufficient to prove by clear and convincing evidence that cross-appellant was unable to provide a safe home for his sons.

2. The evidence is overwhelmingly in favor of cross-appellant's ability to parent his children.

3. The testimonies of social worker Mr. Wendell Omura and Ms. Adele Tomoyasu

do not refute the expert testimony of Dr. David Roscoe and Dr. Tom Loomis that father was capable of safely parenting his sons.

4. The testimony of Jaylin Sualog established that cross-appellant possessed sufficient parenting skills to provide a safe home for his sons.

## APPEAL NO. 26739

On July 30, 2003, Judge Carlsmith entered Orders Concerning Child Protective Act continuing foster custody of First Son and Fifth Son and ordering the March 5, 2003 service plan into effect. The goal of this service plan was the reunification of the children with their parents by June 2003.

On November 18, 2003, DHS filed a Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan regarding First Son and Fifth Son. On November 20, 2003, Judge Lillian Ramirez–Uy entered Orders Concerning Child Protective Act continuing the March 5, 2003 service plan and scheduling a trial on the issue of permanent custody.

On April 16, 2004, Judge Carlsmith entered a pre-trial order that, among other things, permitted Fifth Son to move to California to live with his foster parent.

On June 1, 2004, after a trial, Judge Carlsmith entered an Order Awarding Permanent Custody that divested the parental and custodial duties and rights of Mother and Father pursuant to HRS §§ 587–2 and 587–73; appointed the Director of Human Services, State of Hawai'i, as permanent custodian of the children; and ordered the November 8, 2003 Permanent Plan into effect. The goal of the latter was the adoption of First Son and Fifth Son. On July 13, 2004, Judge Carlsmith entered an Amended Order Awarding Permanent Custody changing the date of the permanent plan review hearing.

On June 21, 2004, Father filed a motion for reconsideration of the June 1, 2004 order granting the motion for permanent custody.

On July 13, 2004, Judge Carlsmith entered Orders Concerning Child Protective Act denying Father's June 21, 2004 motion for re-consideration and an Amended Order Awarding Permanent Custody.

On August 2, 2004, Father's notice of appeal from the June 1, 2004 order and the July 13, 2004 orders was filed.

On September 9, 2004, Judge Marilyn Carlsmith entered Findings of Fact and Conclusions of Law (September 9, 2004 FsOF and CsOL) containing approximately one hundred eighty findings of fact. The signature page indicates that a copy was sent to counsel for Father. In relevant part, those findings state as follows:

1. The findings of fact and conclusions of law that were filed in this case on November 5, 2003 regarding the award of permanent custody of [Second Son, Third Son and Fourth Son] are fully incorporated into these findings of fact and conclusions of law.

. . . .

7. Herbert Hamada has been Father's court appointed attorney on or about February 11, 2002.

. . . .

35. Father's lack of candor with his domestic violence counselor shows lack of insight into his own domestic violence issues, non-comprehension of domestic violence issues in general, and is an attempt to portray himself in a positive light that has lead [sic] to misdiagnosis, ineffective delivery of services and limited the internalization of services.

. . . .

43. Father has only a shallow understanding of parenting, limited to the provision of food and some attention.

. . . .

70. Father is not willing and able to care for [Fifth Son] because he does not even want to be educated on [Fifth Son's] issues such as Reactive Attachment Disorder. With Father's style of parenting of dealing with needs and issues as they arise, Father will not be able to adequately address the complexities of RAD. Furthermore, with a diagnosis of RAD, the issue has already come up and needs to be dealt with immediately, but Father refuses to be educated.

71. Father's prognosis for substantial improvement in the quality of his parenting is poor despite his attachment to his sons.

. . . .

94. Father disrespects women and is a poor role model for [First Son] because he makes disrespectful comments to women in front of [First Son], such as telling a DHS aide that he does not like her hair or telling her that she is gaining weight.

. . . .

101. Father's testimony at the 2004 trial was not consistent with his testimony given at the 2003 trial.

. . . .

175. Wendall Omura, Dr. David Roscoe, and Dr. Brenda Wong were expert witnesses whose testimonies were credible and helpful to the court.

The record on appeal filed on October 1, 2004 did not include the September 9, 2004 FsOF and CsOL.

In the opening brief filed on December 10, 2004, counsel for Father states that "[t]here are no findings of fact and conclusions of law filed in the second trial" and "[t]he trial court entered no findings of fact pertinent to the second trial in May/June 2004." In that opening brief, similar to the opening brief filed in appeal no. 26080, Father presents only the following points on appeal:

1. The evidence is insufficient to prove by clear and convincing evidence that father-appellant was unable to provide a safe home for his sons.

2. The evidence is overwhelmingly in favor of father-appellant's ability to parent his children.

3. The testimony of social worker Mr. Wendell Omura is not credible.

An Amended Record on Appeal filed on December 21, 2004 included the September 9, 2004 FsOF and CsOL.

In his reply brief filed on March 31, 2005, counsel for Father states, in relevant part, as follows:

On December 21, 2004 an Amended Record On Appeal was filed in this matter to include the Findings of Fact and Conclusions of Law filed on September 9, 2004.

On March 21, 2005 the [DHS] filed its answering brief and made arguments against Father–Appellant referencing the findings of fact and conclusions of law from page 18 through 23.

Because Father–Appellant did not have the benefit of utilizing the findings of fact and conclusions of law in support of his position, arguments by the [DHS] utilizing the findings of fact and conclusions of law should be disregarded. Alternatively, Father–Appellant should be allowed to resubmit another opening brief utilizing the findings of fact and conclusions of law filed on September 9, 2004.

On April 22, 2005, appeal no. 26739 was assigned to this court.

## RELEVANT RULES

The Hawai'i Family Court Rules (2005) (HFCR) state, in relevant part, as follows:

**Rule 52. Findings by the court.**

(a) Effect. In all actions tried in the family court, the court may find the facts and state its conclusions of law thereon or may announce or write and file its decision and direct the entry of the appropriate judgment; except upon notice of appeal filed with the court, the court shall enter its findings of fact and conclusions of law where none have been entered, unless the written decision of the court contains findings of fact and conclusions of law. To aid the court, the court may order the parties or either of them to submit proposed findings of fact and conclusions of law, where the written decision of the court does not contain the findings of fact and conclusions of law, within 10 days after the filing of the notice of appeal, unless such time is extended by the court. Requests for findings are not necessary for purposes of review. Findings of fact if entered shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of

the court. If a decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

The Hawai'i Rules of Appellate Procedure (2005) (HRAP) states, in relevant part, as follows:

**RULE 10.   The record on appeal.**

. . . .

(f) Request for Findings of Fact and Conclusions of Law. In all actions where the court appealed from is not required to enter findings of fact and conclusions of law prior to the entry of an order, judgment, or decree, but is required to do so once a notice of appeal is filed, the appellant shall, no later than 10 days after filing the notice of appeal, file in the court appealed from a request for entry of findings of fact and conclusions of law, naming the judge who tried the action and entered the order, judgment, or decree being appealed. The named judge shall enter the requested findings of fact and conclusions of law within 28 days after the request has been filed. To aid the court, the court may order the parties or either of them to submit proposed findings of fact and conclusions of law after the filing of the request.

. . . .

**RULE 28.   Briefs.**

. . . .

(b) Opening Brief. Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:

. . . .

(3) A concise statement of the case, setting forth the nature of the case, the course and disposition of proceedings in the court or agency appealed from, and the facts material to consideration of the questions and points presented, with record references supporting each statement of fact or mention of court or agency proceedings. In presenting those material facts, all supporting and contradictory evidence shall be presented in summary fashion, with appropriate record references. Record references shall include page citations and the volume number, if applicable. References to transcripts shall include the date of the transcript, the specific page or pages referred to, and the volume number, if applicable. Lengthy quotations from the record may be reproduced in the appendix. There shall be appended to the brief a copy of the judgment, decree, findings of fact and conclusions of law, order, opinion or decision relevant to any point on appeal, unless otherwise ordered by the court.

(4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency. Where applicable, each point shall also include the following:

. . . .

(C) when the point involves a finding or conclusion of the court or agency, a quotation of the finding or conclusion urged as error;

. . . .

Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented. Lengthy parts of the transcripts that are material to the points presented may be included in the appendix instead of being quoted in the point.

HRAP Rule 10(f) has been in effect since January 1, 2004.

## DISCUSSION

■ In appeal no. 26080, in his opening brief filed on February 18, 2004, counsel for Father did not, in the points on appeal, challenge any of the more than three hundred findings of fact entered on November 5, 2003. Thus, they state the facts unless, in our review of the record, we have noticed one or more erroneous findings of fact and the er-

ror(s) are the kind that this court, in its discretion, may notice as plain error.

> See *Leibert v. Finance Factors, Ltd.,* 71 Haw. 285, 288, 788 P.2d 833, 835 (1990) (findings of fact not specified as error on appeal pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(C) are treated as unchallenged on appeal); HRAP Rule 28(b)(4)(C) (2000); cf. *Amfac, Inc. v. Waikiki Beachcomber Investment Co.,* 74 Haw. 85, 125, 839 P.2d 10, 31 (1992) (conclusion of law not challenged on appeal is treated as binding on the appeals court).

*State v. Sanford,* 97 Hawai'i 247, 256, 35 P.3d 764, 773 (App.2001).

▆▆▆ An appellate court "may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Staley,* 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (internal quotation marks and citation omitted). Appellate courts "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Vanstory,* 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) (internal quotation marks and citation omitted).

> This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system-that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

*Id.* (quoting *State v. Kelekolio,* 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993)).

In appeal no. 26739, assuming that when counsel for Father filed the opening brief on December 10, 2004, counsel for Father was unaware that the family court had entered the September 9, 2004 FsOF and CsOL, counsel for Father should have asked the family court to comply with its duty as specified in HFCR Rule 52(a). Counsel for Father did not do this.

In appeal no. 26739, assuming counsel for Father was aware that the September 9, 2004 FsOF and CsOL had been entered but also was aware that they had not been made

a part of the record on appeal, counsel for Father should have asked the appellate court with appellate jurisdiction in the case for an extension of time to file the opening brief until those findings were made a part of the record on appeal. Counsel for Father did not do this. Instead, counsel for Father filed the opening brief on December 10, 2004, after the family court entered the relevant findings of fact on September 9, 2004, but before they were made a part of the record on appeal on December 21, 2004. In the reply brief, counsel for Father states that

> [b]ecause Father–Appellant did not have the benefit of utilizing the findings of fact and conclusions of law in support of his position, arguments by the [DHS] utilizing the findings of fact and conclusions of law should be disregarded. Alternatively, Father–Appellant should be allowed to resubmit another opening brief utilizing the findings of fact and conclusions of law filed on September 9, 2004.

Counsel does not specify how the new opening brief would be "utilizing" those findings and conclusions.

In appeal no. 26739, although counsel for Father asserts that "[t]he testimony of social worker Mr. Wendall Omura is not credible[,]" thus implicitly challenging a part of FOF no. 175, he does not attempt to overcome the rule that "[a]n appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge." *State v. Barros,* 105 Hawai'i 160, 170, 95 P.3d 14, 24 (App. 2004) (citing *State v. Eastman,* 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996) (internal citations omitted)).

In these appeals, we have not noticed any error and are not presented with a plain error issue. Thus, the applicable unchallenged findings are the facts relevant to each appeal. In each appeal, the applicable facts support the family court orders challenged by Father.

## CONCLUSION

Accordingly, in appeal no. 26080, we affirm the July 30, 2003 Order Awarding Permanent

Custody and the September 5, 2003 Orders Concerning Child Protective Act denying the motion for reconsideration.

In appeal no. 26739, we affirm the June 1, 2004 Order Awarding Permanent Custody, the July 13, 2004 Amended Order Awarding Permanent Custody, and the July 13, 2004 Orders Concerning Child Protective Act denying the motion for reconsideration.